# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1345-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Andrew M. Obriecht, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 353 Wis. 2d 542, 846 N.W. 2d 479)
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 42

| | |
|---|---|
| OPINION FILED: | July 7, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 3, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dane |
|   JUDGE: | William E. Hanrahan |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | BRADLEY, J., joined by ABRAHAMSON and CROOKS, JJ. concur (Opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Colleen Marion*, assistant state public defender, and oral argument by *Colleen Marion*.

For the plaintiff-respondent, the cause was argued by *Katherine D. Lloyd*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

An amicus curiae brief was filed by *Jeff Scott Olson*, Madison, on behalf of the Wisconsin Association of Criminal Defense Lawyers.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2013AP1345-CR
(L.C. No.   1998CF271)

STATE OF WISCONSIN                    :        IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Respondent,

      v.

Andrew M. Obriecht,

      Defendant-Appellant-Petitioner.

**FILED**

**JUL 7, 2015**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals.  *Reversed.*

¶1   PATIENCE DRAKE ROGGENSACK, C.J.   This sentence credit case arises from Andrew M. Obriecht's convictions of seven misdemeanors and one felony, wherein we review a decision of the court of appeals[1] that affirmed the circuit court's[2] denial of

---

[1] State v. Obriecht, 2014 WI App 42, 353 Wis. 2d 542, 846 N.W.2d 479.

[2] The Honorable William E. Hanrahan of Dane County presiding.

Obriecht's motion for sentence credit.[3] The circuit court agreed that Obriecht was due sentence credit, but the court refused to apply the credit to his incarceration, and instead, applied the credit to Obriecht's parole following incarceration.

¶2 As we explain below, Obriecht was not sentenced for the felony conviction until probation for that conviction was revoked. At that time, he was eligible to receive sentence credit against the felony sentence the court imposed. However, no sentence credit was given. Obriecht was paroled from incarceration for the felony conviction and subsequently his parole was revoked. It was at the revocation of parole that Obriecht first requested the sentence credit that is now before us.

¶3 We conclude that because Obriecht had completed the sentences for his misdemeanor convictions when his parole from incarceration for the felony was revoked and he first requested sentence credit, the only sentence to which sentence credit could be applied was the indeterminate sentence for the felony conviction. We also conclude that not all of the days of Obriecht's custody prior to his 2001 incarceration at Dodge

---

[3] Obriecht and the State acknowledge that Obriecht has been released from incarceration. However, we choose to decide the questions presented because they are capable of repetition, yet may evade review. G.S., Jr. v. State, 118 Wis. 2d 803, 805, 348 N.W.2d 181 (1984). The question of application of sentence credit to a revoked probationer may evade review because with reincarceration orders, the appellate process frequently cannot be completed such that the decision has a practical effect on the parties. Id.

Correctional Institution were in connection with the conduct that led to the felony sentence. We further conclude that although Obriecht had 105 days of custody for which he had not yet received sentence credit when his parole was revoked, as we explain below, only 42 days of custody were in connection with the course of conduct that led to the felony sentence. Therefore, 42 of the 105 days of custody prior to Obriecht's 2001 incarceration should have been applied to his term of reincarceration for the felony conviction. Wis. Stat. § 973.155 (2011-12).[4] We also conclude that when a convicted defendant's parole is revoked, the parolee's indeterminate sentence that was issued by the circuit court resumes running so that it is available to accept sentence credit. Wis. Stat. § 304.072(4). Accordingly, we reverse the court of appeals decision that affirmed the circuit court's denial of Obriecht's motion for sentence credit.[5]

---

[4] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[5] Obriecht, 353 Wis. 2d 542.

## I.  BACKGROUND

¶4   The criminal violations that underlie this dispute all occurred before Truth-in-Sentencing (TIS) commenced.[6]  Obriecht was charged with and convicted of seven misdemeanors and one felony.  Prior to serving his sentences, he was in custody in 1998, 1999 and 2001.  Upon conviction, he was given some sentence credit for these periods of custody.  The parties agree that Obriecht accumulated more sentence credit than the court awarded.  However, the parties differ on how the court should have applied the requested sentence credit because Obriecht first requested sentence credit after his parole from the felony sentence was revoked.

¶5   The periods of confinement are somewhat hard to follow, as are their connections with the sentences given.  Two circumstances lead to this difficulty.  First, Obriecht was arrested and convicted of seven misdemeanors and a felony, but he was sentenced initially only on the misdemeanors and given probation for the felony.  Second, Obriecht did not request the

---

[6] TIS changed Wisconsin sentencing laws, breaking from the indeterminate form of sentencing and creating a bifurcated structure for imprisonment:  a term of prison confinement followed by a term of extended supervision. Michael B. Brennan et al., Fully Implementing Truth-in-Sentencing, Wis. Law., Nov. 2002, at 11.  Obriecht committed the count one felony before TIS went into effect for felonies. State v. Stenklyft, 2005 WI 71, ¶16, 281 Wis. 2d 484, 697 Wis. 2d 769 (stating Wis. Stat. § 973.01(1) was a main feature of TIS); § 973.01(1) (stating TIS for felonies went into effect on December 31, 1999).  Obriecht also committed the misdemeanors in counts two through seven before TIS went into effect for misdemeanors. Id. (stating TIS for misdemeanors went into effect on February 1, 2003).

sentence credit that is at issue here until he had completed the misdemeanor sentences and parole from incarceration for the felony had been revoked.

¶6  In an effort to clarify, we begin by setting out the periods of Obriecht's custody that was in connection with both the misdemeanors and the felony.  We then identify custody that was imposed solely in connection with the misdemeanors.  Next, we identify the sentence credit given and apply it to the 1998, 1999, and 2001 custody[7] beginning with the 1998 period of custody.  In that way, the sentences imposed connect with the credit given and the mathematical calculation of the custody for which sentence credit was not given.

¶7  On February 2, 1998 Obriecht was arrested and charged with seven misdemeanors and one felony.  He was released on bail pending trial on October 16, 1998, resulting in custody of 257 days.

¶8  On June 30, 1999, Obriecht was convicted by a jury of all eight counts, seven misdemeanors and one felony, and he was taken into custody.  On November 19, 1999, Obriecht was sentenced on the misdemeanor convictions, whereon he received a combined indeterminate sentence of seven years.  On the felony conviction, the court withheld sentence and placed Obriecht on 12 years probation.  The custody from June 30 to November 19 resulted in additional custody of 142 days.

---

[7] The 1998, 1999, and 2001 periods of custody refer to Obriecht's custody prior to his incarceration on April 21, 2001 at Dodge Correctional Institution.

¶9   Obriecht continued in custody until December 20, 1999, when his misdemeanor sentences were stayed pending appeal and he was released on bail.  The period of custody from sentencing on November 19, 1999 to bail on December 20, 1999 resulted in additional custody of 32 days.

¶10  On March 21, 2001, the stay of Obriecht's misdemeanor sentences was lifted and he was held in jail.  Obriecht entered Dodge Correctional Institution on April 21, 2001 to begin his sentence on the misdemeanor convictions, resulting in additional custody of 31 days.  Therefore, Obriecht's total custody prior to his April 21, 2001 incarceration was 462 days (257 + 142 + 32 + 31 days).[8]

¶11  In regard to sentence credit, the circuit court initially granted Obriecht 326 days of sentence credit when he was sentenced for the misdemeanor convictions.  On March 21, 2001, when the circuit court lifted the stay pending appeal, the court granted an additional 31 days, for a total of 357 days of

---

[8]

| Period of Custody | Days in Custody |
| --- | --- |
| 2/2/1998 to 10/16/1998 | 257 |
| 6/30/1999 to 11/19/1999 | 142 |
| 11/19/1999 to 12/20/1999 | 32 |
| 3/21/01 to 4/21/01 | 31 |
| TOTAL | 462 |

| Date of Credit Award | Days of Credit Awarded |
| --- | --- |
| 11/19/1999 | 326 |
| 3/21/2001 | 31 |
| TOTAL | 357 |

sentence credit. However, Obriecht had spent a total of 462 days in custody. Therefore, Obriecht was due an additional 105 days of sentence credit at that time.

¶12 On August 17, 2001, while he was incarcerated at Dodge Correctional Institution, Obriecht's probation on the felony conviction was revoked. The circuit court sentenced him to an indeterminate seven-year sentence "[c]onsecutive to any other sentence." No additional sentence credit was given.

¶13 On March 22, 2011, Obriecht was released on parole from the indeterminate seven-year sentence for the felony conviction.[9] Obriecht violated parole, and was returned to prison on February 1, 2013.

¶14 On February 1, 2013, Obriecht, proceeding pro se, first requested 107 days of sentence credit. Initially, the State did not object to Obriecht's request. The circuit court agreed and "adjudged that 107 days sentence credit are due pursuant to § 973.155, Wisconsin Statutes."

¶15 However, on March 21, 2013, the Department of Corrections (DOC) wrote to the circuit court asking the court to "clarify" Obriecht's amended judgment of conviction. The DOC said that it read Wis. Stat. § 302.11(7) to mean that sentence credit awarded to one whose parole has been revoked was not applied to reincarceration, but rather, sentence credit should reduce parole time that may remain.

---

[9] When Obriecht was released on parole from the consecutive felony sentence, he had completed the misdemeanor sentences.

7

¶16 Obriecht disputed the DOC's interpretation of Wis. Stat. § 302.11(7), pro se. Obriecht argued that Wis. Stat. § 973.155(5) requires sentence credit be applied to reduce incarceration. Upon reconsideration, the circuit court agreed with the DOC, and on April 3, 2013, the court rescinded the application of 107 days of sentence credit to Obriecht's term of incarceration and applied the credit to any term of subsequent parole.[10]

¶17 Obriecht appealed. He argues that the circuit court should have applied 107 days of sentence credit to his period of reincarceration because all of the 107 days were incurred in connection with the crimes for which he was incarcerated prior to parole.[11]

¶18 The court of appeals concluded that the plain language of Wis. Stat. § 302.11(7)(am) and (b) required that Obriecht's sentence credit be applied to reduce parole rather than reincarceration ordered by the Department of Hearings and Appeals (DHA). State v. Obriecht, 2014 WI App 42, ¶13, 353 Wis. 2d 542, 846 N.W.2d 479. The court explained that § 302.11(7)(b) provided that a revoked parolee "'shall be incarcerated for the entire period of time'" ordered by the DHA.

---

[10] The court did not issue a ruling, but rather noted on Obriecht's March 18, 2013 letter: "DOC interpretation of law in correspondence of 3/18/13 is correct." The notation is signed and dated April 3, 2013.

[11] Obriecht's counsel did not itemize the 107 day-tally for sentence credit, and we have not been able to determine how that number was calculated.

Id. (quoting § 302.11(7)(b)). Doing as Obriecht requested, the court concluded would violate the express terms of § 302.11(7)(b). Id.

¶19 Obriecht sought review, which we granted. Before us, the State initially acknowledged that Obriecht was due sentence credit, but contended that sentence credit applied to any remaining time on parole because it could not be applied to reduce the length of reincarceration that the DHA ordered when Obriecht's parole was revoked. At oral argument, the State shifted its argument and contended that Obriecht's custody was not sufficiently connected to the course of conduct for which sentence was imposed to merit sentence credit. We address this argument, as well as those arguments that were briefed.

## II. DISCUSSION

¶20 Obriecht contends that the circuit court erred in failing to grant sentence credit when he was sentenced for the felony conviction and he is seeking to correct that error. The State focuses on a later period in time, i.e., when the DHA revoked Obriecht's subsequent parole from the felony sentence, and contends that Wis. Stat. § 302.11(7)(b) requires Obriecht to serve the full term of reincarceration that he was given by the DHA. At oral argument, the State also contended that the sentence credit Obriecht requested is not sufficiently connected with the course of conduct for which he was sentenced. They present two very different questions, and as we explain below, both Obriecht and the State are correct to some extent.

9

## A. Standard of Review

¶21 We review whether the circuit court correctly applied Obriecht's sentence credit to his parole rather than to his incarceration under the provisions of Wis. Stat. § 973.155. We also consider Wis. Stat. § 304.072(4) and Wis. Stat. § 302.11(7). Statutory interpretation and application present questions of law that we review independently while benefitting from prior decisions of other courts. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581.

## B. Sentence Credit

### 1. General principles

¶22 Statutory interpretation begins with the plain meaning of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Context and structure of the statute are also important to the meaning of the statute. Id., ¶46.

¶23 Tallying and awarding sentence credit originated as a matter of equal protection. See Klimas v. State, 75 Wis. 2d 244, 249, 249 N.W.2d 285 (1977) (holding that an indigent person who could not make bail was denied a liberty interest if not given sentence credit for all time spent in custody). Sentence credit is designed to afford fairness so that a person does not serve more time than that to which he or she is sentenced. State v. Beets, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985).

¶24 When sentence credit is applied at the time of sentencing, in this case either at the sentencing for the misdemeanors or at the later sentencing for the felony, the

circuit court should apply sentence credit to the term of incarceration. See State v. Wolfe, 2001 WI App 66, ¶1, 242 Wis. 2d 426, 625 N.W.2d 655 (credit must be applied to incarceration term, not consecutive stayed sentence); Wis. Stat. § 973.155(3) (computing custody as if it were served time in the institution to which the defendant has been sentenced).

¶25 In deciding whether to award sentence credit under Wis. Stat. § 973.155, a court must make two determinations: (1) whether the defendant was "in custody" for the period under consideration, and (2) whether the custody was "in connection with the course of conduct for which sentence was imposed." State v. Marcus Johnson, 2007 WI 107, ¶32, 304 Wis. 2d 318, 735 N.W.2d 505. "Custody" means a detention status for which a defendant is subject to an escape charge if he leaves the place of detention. State v. Magnuson, 2000 WI 19, ¶25, 233 Wis. 2d 40, 606 N.W.2d 536.

### 2. Obriecht's custody

¶26 Whether Obriecht was "in custody" is not where the challenge lies in this case; but rather, whether the custody was "in connection with the course of conduct for which sentence was imposed" is our focus. In that regard, we begin with Wis. Stat. § 973.155(1)(a), which provides in relevant part:

> "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
>
> 1. While the offender is awaiting trial;

11

> 2. While the offender is being tried; and
>
> 3. While the offender is awaiting imposition of sentence after trial.

In order for the sentence to be "in connection with the course of conduct for which sentence was imposed," there must be a factual connection between the custody and the sentence. State v. Elandis Johnson, 2009 WI 57, ¶65, 318 Wis. 2d 21, 767 N.W.2d 207.

¶27 When custody is at least "in part due to the conduct resulting in [a] new conviction," a court must award sentence credit under Wis. Stat. § 973.155(1)(b). State v. Hintz, 2007 WI App 113, ¶11, 300 Wis. 2d 583, 731 N.W.2d 646. Here, the sentence for the felony conviction was issued subsequent to the sentences for the misdemeanor convictions as a consecutive sentence.

¶28 Because all of Obriecht's custody was not in connection with both the misdemeanor and felony sentences, it is important in our review to identify to which sentences the custody relates. The first period of custody began on February 2, 1998 when Obriecht was arrested and charged with seven misdemeanors and one felony. This period of custody ended on October 16, 1998, a period of 257 days, when he was released on bail. These 257 days have a factual connection to the conduct that led to the sentences issued for both misdemeanors and felony; therefore, this period of custody was in connection with the course of conduct for which he subsequently was

sentenced for both misdemeanor and felony convictions. Elandis
Johnson, 318 Wis. 2d 21, ¶66.

¶29 Obriecht was convicted by a jury of all eight counts
on June 30, 1999, and he was taken into custody. On
November 19, 1999, Obriecht was sentenced on the misdemeanor
convictions, but sentence was withheld on the felony conviction
and Obriecht was placed on 12 years probation. This 142-day
period from conviction to sentencing was in connection with the
conduct that led to sentencing for misdemeanors and felony. No
days in custody subsequent to November 19, 1999 were in
connection with the felony sentence because probation is not a
sentence. State v. Edwards, 2013 WI App 51, ¶7, 347 Wis. 2d
526, 830 N.W.2d 109; Wis. Stat. § 973.155(1)(a). However,
Obriecht's custody did continue after sentencing on November 19,
1999, until he was released on bail pending appeal on
December 20, 1999. This additional 32 days of custody was
solely in connection with the misdemeanor sentences.

¶30 On March 21, 2001, the stay of Obriecht's misdemeanor
sentences pending appeal was lifted and he was taken into
custody for transportation to prison to serve the sentences for
his misdemeanor convictions. Pre-incarceration custody ended
when he entered Dodge Correctional Institution on April 21,
2001, adding custody of 31 days, which is in connection with the
conduct that led to sentences for his misdemeanor convictions.
State v. Gilbert, 115 Wis. 2d 371, 380, 340 N.W.2d 511 (1983)
(concluding that the "clear intent of sec. 973.155, Stats., is
to grant credit for each day in custody regardless of the basis

13

for the confinement as long as it is connected to the offense for which sentence is imposed.").

¶31 When Obriecht reached Dodge Correctional Institution, Obriecht had served 462 days in custody in connection with the conduct that gave rise to the sentences for his misdemeanor convictions.[12] The circuit court had granted Obriecht 326 days sentence credit when he was sentenced for the misdemeanors and the court granted an additional 31 days of sentence credit upon transportation to Dodge Correctional Institution, for a total of 357 days sentence credit. Therefore, 105 days that Obriecht had been in custody were not credited.

¶32 On August 17, 2001, Obriecht's probation for the felony conviction was revoked, and he was sentenced to a seven-year indeterminate sentence, consecutive to the misdemeanor sentences he was then serving. No additional sentence credit was given when he was sentenced for the felony conviction.

¶33 Obriecht was released from prison on parole from the felony sentence March 22, 2011. On February 1, 2013, he was returned to prison for violating the conditions of his parole. The State asserts that sentence credit awarded during Obriecht's most recent and final period of incarceration, following the revocation of parole, can be applied only to time that may remain for a subsequent parole. This argument of the State is grounded in its interpretation of Wis. Stat. § 302.11(7). The State also asserts that all of the days of custody in 1998,

---

[12] See supra note 7.

1999, and 2001 for which sentence credit was not awarded did not arise from custody that was in connection with the course of conduct that resulted in the felony sentence.

¶34 We note that parole revocation does not involve the imposition of an additional criminal sanction. See State ex rel. Flowers v. DHSS, 81 Wis. 2d 376, 384-86, 260 N.W.2d 727 (1978) (explaining that parole revocation is civil in nature and that the sentence a defendant is required to serve on revocation is the sentence for the crime of which the defendant previously was convicted). The DHA has limited discretion to return revoked parolees to prison up to the remainder of their original sentence and not beyond. Id. at 386 (stating that the element of punishment upon revocation is tied to the sentence previously imposed).

¶35 We also consider Wis. Stat. § 304.072(4) to determine the effect of parole revocation on a defendant's sentence because the statute addresses that circumstance. Section 304.072(4) provides:

> The sentence of a revoked parolee or person on extended supervision resumes running on the day he or she is received at a correctional institution subject to sentence credit for the period of custody in a jail, correctional institution or any other detention facility pending revocation according to the terms of s. 973.155.

The "sentence" to which § 304.072(4) refers is the sentence that was issued by the circuit court subsequent to conviction. We come to this conclusion because § 304.072(4) looks back at a sentence earlier commenced, i.e., the sentence "resumes

15

running." Therefore, when Obriecht's parole was revoked, the seven-year indeterminate sentence for Obriecht's felony conviction caused reincarceration. Accordingly, the DHA's reincarceration order did not establish reincarceration as a new "sentence." Id. Rather, it was a continuation of the sentence meted out by the circuit court judge. Therefore, if Obriecht had not received all the sentence credit that was available to apply to the felony sentence when that sentence was imposed, he could have received it when his parole was revoked.

¶36 Stated otherwise, the computation of sentence credit is governed by Wis. Stat. § 973.155(3) that provides: "The credit provided in sub. (1) or (1m) shall be computed as if the convicted offender had served such time in the institution to which he or she has been sentenced." The plain language of § 973.155(3) demonstrates that Obriecht is entitled to have the total amount of time he must spend in prison reduced by the amount of time he has spent in custody outside of prison when custody is in connection with the conduct for which the sentence is imposed. Elandis Johnson, 318 Wis. 2d 21, ¶66. In addition, when sentences are consecutive, sentence credit is not issued to more than one sentence so long as the first sentence to be served is sufficient to receive the sentence credit at issue. State v. Boettcher, 144 Wis. 2d 86, 93-95, 423 N.W.2d 533 (1988) (citing Doyle v. Elsea, 658 F.2d 512, 515 (1981) as Doyle interprets 18 U.S.C. § 3568 upon which § 973.155 was based).

¶37 As we explain, the custody first imposed should be applied to the sentence first imposed, with consecutive

16

sentences. As our discussion in the paragraphs above show, Obriecht's first period of custody extended 257 days, with the next period of custody extending 142 days. Of the 399 days in custody, the circuit court granted 326 days as sentence credit against the misdemeanor sentences.

¶38 The next periods of custody occurred between sentencing and release on bail pending appeal, 32 days, and between revocation of bail and transportation to Dodge Correctional Institution, 31 days. These periods of custody occurred solely in connection with conduct relating to the misdemeanor sentences because Obriecht was not being held for the felony conviction, on which the court had withheld sentence when it placed him on probation.

¶39 When Obriecht was transported to Dodge Correctional Institution, Obriecht had 73 days of custody in connection with the course of conduct that resulted in sentences for misdemeanor convictions and felony conviction. He also had 63 days of pre-incarceration custody that occurred after sentencing for misdemeanors and his probation for the felony conviction.

¶40 The circuit court granted 31 days of additional sentence credit when Obriecht was transported to Dodge Correctional Institution. Because we apply sentence credit granted to the earliest period of custody eligible for the credit, we apply the 31 days of credit to the 73 days of custody yet remaining that were in connection with both misdemeanor sentences and subsequently issued felony sentence, leaving 42 days that were in connection with the conduct that led to the

17

felony sentence. Stated otherwise, we apply granted sentence credit to the longest outstanding days of custody that were in connection with the conduct that led to the sentence.

¶41 As the State pointed out at oral argument, and as we have explained above, not all of the custody was in connection with the felony. After all sentence credit was awarded, there remained 42 days that was in connection with the course of conduct that led to both the misdemeanor and felony sentences and 63 days that was in connection with the misdemeanor sentences, a period of 105 days. Therefore, because the felony sentence was consecutive to the misdemeanor sentences and because 63 of the 105 days of custody that remained were in connection with the misdemeanors, only 42 days were in connection with the felony sentence.

¶42 Obriecht's continuation of the felony sentence upon parole revocation is the seven-year indeterminate, consecutive sentence the circuit court imposed on August 17, 2001. See Flowers, 81 Wis. 2d at 386 (stating "punishment in parole revocation is attributable to the crime for which the parolee was originally convicted and sentenced"); Wis. Stat. § 304.072(4) (stating sentence of a revoked parolee "resumes running"). Therefore, we conclude that on February 1, 2013 when Obriecht's parole was revoked and he was returned to prison, he should have received 42 days credit for custody that was in connection with conduct that led to the felony sentence, which sentence was available to accept such credit. To do otherwise, would be unfair to Obriecht and cause him to suffer a longer

18

period of incarceration for the felony conviction than the circuit court ordered.

¶43 The court of appeals and the State, in part, relied on Wis. Stat. § 302.11, titled "Mandatory release," to hold that Obriecht's sentence credit applied to reduce his parole rather than reincarceration. Obriecht, 353 Wis. 2d 542, ¶12. Specifically, the court of appeals held that the § 302.11(7)(b) language that a parolee "shall be incarcerated for the entire period of time determined by the reviewing authority" would be violated if the court applied the sentence credit to the reincarceration period. Id.; § 302.11(7)(b).

¶44 We can see where the court of appeals found a conflict between Obriecht's request and Wis. Stat. § 302.11(7). However, we have applied the credit to the felony sentence in fairness to Obriecht, who should have received this credit on August 17, 2001 when he was sentenced on the felony conviction.

¶45 Furthermore, Wis. Stat. § 302.11(7) plainly applies to mandatory release, as indicated by its structure and statutory history.[13] Paragraph (7)(b) first states the general rule that

---

[13] Mandatory release. . . . [(7)](am) The reviewing authority may return a parolee released under sub. (1) or (1g)(b) or s. 304.02 or 304.06(1) to prison for a period up to the remainder of the sentence for a violation of the conditions of parole. The remainder of the sentence is the entire sentence, less time served in custody prior to parole. The revocation order shall provide the parolee with credit in accordance with ss. 304.072 and 973.155.

(b) A parolee returned to prison for violation of the conditions of parole shall be incarcerated for the entire period of time determined by the reviewing

19

revoked parolees are not subject to early release; the next sentence provides a specific example that revoked parolees are not subject to mandatory release.  It does not address the problem caused by custody incurred before sentencing that was not granted at sentencing.

¶46  Our reading of Wis. Stat. § 302.11(7)(b) is confirmed by statutory history.  See Cnty. of Dane v. LIRC, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571 (explaining that statutory history is part of a plain meaning analysis).  To explain further, the predecessor to § 302.11(7)(b) provided mandatory release for revoked parolees.[14]  The legislature repealed the preceding statute and replaced it with language prohibiting

---

authority unless paroled earlier under par. (c).  The parolee is not subject to mandatory release under sub. (1) or presumptive mandatory release under sub. (1g). The period of time determined under par. (am) may be extended in accordance with subs. (1q) and (2).

Wisconsin Stat. § 302.11(7).

[14] Any person on parole under this subsection may be returned to prison as provided in section 57.06(3) or 57.07(2) to serve the remainder of his sentence.  He may earn good time on the balance of such sentence while so in prison, subject to forfeiture thereof for misconduct as herein provided.  He may again be released on parole thereafter under either this section or section 57.06 or 57.07, whichever is applicable.  The remainder of his sentence shall be deemed to be the amount by which his original sentence was reduced by good time.

Wisconsin Stat. § 53.11(7)(b) (1951).  In 1984, the legislature replaced earning "good time" with "entitlement to mandatory release."  See 1983 Wis. Act 528, § 9.

20

mandatory release for revoked parolees in 1984, which explains the specific example in the statute.[15]

¶47 Wisconsin Stat. § 302.11(7)(am) also is not helpful in determining sentence credit under the facts before us. Section 302.11(7)(am) makes express reference to application of sentence credit. It provides for sentence credit in the context of a revocation order, citing both Wis. Stat. § 304.072 and Wis. Stat. § 973.155. Furthermore, the § 302.11(7)(am) reference to "the entire sentence" does not affect our analysis. It refers to the reincarceration required in Obriecht's revocation order. However, it is Obriecht's sentence imposed by the circuit court that is modified by sentence credit. Additionally, because our interpretation of § 973.155 resolves the question of Obriecht's sentence credit, we decline to address the issue of whether the court of appeals' application of § 302.11(7) violated equal protection.

### III. CONCLUSION

¶48 We conclude that because Obriecht had completed the sentences for his misdemeanor convictions when his parole from incarceration for the felony was revoked and he first requested

---

[15] A parolee returned to prison for violation of the conditions of parole shall be incarcerated for the entire period of time determined by the department under par. (a), unless paroled earlier under par. (c). The parolee is not subject to mandatory release under sub. (1). The period of time determined under par. (a) may be extended in accordance with sub. (2).

Wis. Stat. § 53.11(7)(b) (1984); 1983 Wis. Act 528, § 6.

sentence credit, the only sentence to which sentence credit could be applied was the indeterminate sentence for the felony conviction. We also conclude that not all of the days of Obriecht's custody prior to his 2001 incarceration at Dodge Correctional Institution were in connection with the conduct that led to the felony sentence. We further conclude that although Obriecht had 105 days of custody for which he had not yet received sentence credit when his parole was revoked, as we have explained, only 42 days of custody were in connection with the course of conduct that led to the felony sentence. Therefore, 42 of the 105 days of custody prior to Obriecht's 2001 incarceration should have been applied to his term of reincarceration for the felony conviction. Wis. Stat. § 973.155. We also conclude that when a convicted defendant's parole is revoked, the parolee's indeterminate sentence that was issued by the circuit court resumes running so that it is available to accept sentence credit. Wis. Stat. § 304.072(4). Accordingly, we reverse the court of appeals decision that affirmed the circuit court's denial of Obriecht's motion for sentence credit.

*By the Court.*—The decision of the court of appeals is reversed.

¶49 ANN WALSH BRADLEY, J. *(concurring).* I agree with the majority that when a defendant's parole is revoked, sentence credit should be applied to reduce the term of re-incarceration and not parole.

¶50 We accepted review in this case in order to address that question so that future litigants would have clarity. The petitioner asked a discreet question:

> Do the sentence credit statute and the constitutional protections upon which it is based require time spent in "custody" to be credited against time spent in prison, as opposed to time spent on supervision?

Answering that question does not require us to compute the number of days of sentence credit Obriecht should receive.

¶51 Nevertheless, the majority reaches out and endeavors to count the actual days of sentence credit due Obriecht in this unique case made complex by its multiple time periods, legal maneuvers, and convictions involved. Numerous reasons illustrate the folly of the majority tackling this unbriefed issue.

¶52 To begin, half of the record is missing or has been destroyed. Notably, for computation purposes, it is the important half which covers the time periods at issue in this case. Instead, we are left to cobble together the events based on a record with discrepancies between the portions of the record available and the parties' descriptions of events.

¶53 Next, this case is moot and the computation of credit due for this defendant is meaningless. Because Obriecht had completed his sentence by the time this case was heard, a

1

determination of the exact number of days of credit he should have received will have no effect on him.

¶54 Finally, by unnecessarily wading into the exact computation of sentence credit that Obriecht is owed, the majority risks unintentionally creating precedent that could be at odds with the significant purposes fulfilled by awarding sentence credit. Accordingly, I respectfully concur.

I

¶55 The complexity of the facts in this case is reflected in the background provided by the majority. After Obriecht was arrested and charged with seven misdemeanors and a felony, he was in and out of custody for various reasons while awaiting trial, after sentencing, and again while his convictions were on appeal. Majority op., ¶¶7-10. During this period he was awarded sentence credit on two separate occasions. Id., ¶11.

¶56 The parties agree that Obriecht spent more time in custody than he was awarded. This appeal arose from the circuit court's decision to apply the outstanding credit to Obriecht's period of parole rather than the in-custody period of his sentence.

¶57 After discussing the sentence credit statute, the majority announces that it must examine each period of time Obriecht spent in custody and determine which were related to his felony conviction, as that is the conviction to which he sought to apply sentence credit. Id., ¶28. This is followed by a detailed description of each of those time periods and a

computation of the number of days that Obriecht should receive. Id., ¶¶28-32, 37-42.

## II

¶58 The basis for the majority's computation of Obriecht's sentence credit is shaky at best. Less than half of the record has been made available for our review. Out of 272 record documents, only numbers 216 through 279 were transferred to this court. Notably, all of the records received by this court post-date the time periods at issue by several years. Thus, the details of when Obriecht was in custody have been cobbled together from various court filings and decisions and the representations of the parties.

¶59 Even the representations of the parties leave doubt regarding the exact dates and time periods involved. For example, although the parties stipulated that Obriecht had spent an extra 107 days in custody, this court could not reproduce that calculation. Id., ¶17 n.11. Instead it determines that the actual number of days was 105. Id., ¶41. Overall, little detail is contained in the parties' briefs regarding the time periods of Obriecht's custody as they were not disputing the calculation of the sentence credit he was owed.

¶60 The murky record should not have been a problem because the question presented to us did not require us to compute days of sentence credit owed. The actual number at this point is moot because the defendant has completed his sentence. It is further of questionable value given that the crimes involved all occurred pre-Truth-in-Sentencing.

3

¶61 Not only is it unnecessary, but computing the exact number of days of sentence credit owed to Obriecht runs the risk of undermining the significant purposes behind sentence credit. As this court has explained, "Wisconsin's sentence credit statute has its roots in the constitutional principle of equal protection and was an immediate response to this court's call for action in Klimas v. State, 75 Wis. 2d 244, 249 N.W.2d 285 (1977)." State v. Floyd, 2000 WI 14, ¶20, 232 Wis. 2d 767, 606 N.W.2d 155.

¶62 In Klimas, the court addressed a defendant's claim for sentence credit for the time he spent in pre-trial confinement because he could not afford bail. The court acknowledged that this situation raised equal protection concerns, explaining that "[t]he failure to credit pre-trial time or pre-sentence time in custody as the result of indigency means that persons similarly situated except for financial means are subject to different periods of confinement for the same crime." Klimas, 75 Wis. 2d at 248. It then determined that "[t]he obvious method of rectifying the inequality is to credit the preconviction time in partial fulfillment of the sentence imposed upon conviction." Id. at 249.

¶63 Since Klimas, courts have acknowledged that the purpose behind awarding sentence credit extends beyond equal protection, encompassing fairness as well. "[C]onfinement credit is designed to afford fairness——that a person not serve more time than that for which he is sentenced." State v. Beets, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985); see also State v.

4

Johnson, 2009 WI 57, ¶31, 318 Wis. 2d 21, 767 N.W.2d 207 ("Wis. Stat. § 973.155 is designed to prevent a defendant from serving more time than his sentence or his sentences call for."); State v. Martel, 2003 WI 70, ¶24, 262 Wis. 2d 483, 664 N.W.2d 69 ("the remedial purpose of the sentence credit statute was 'to provide sentence credit in a wide range of situations' in order to 'afford fairness' to defendants").

¶64 The equal protection and fairness concerns underlying Wis. Stat. § 973.155 suggest that to the extent possible, a defendant should receive sentence credit for each day spent in custody. To do otherwise would permit defendants with enough money to pay bail to serve shorter sentences than those that do not, and would cause some defendants to spend more time in custody than the sentence they received.

¶65 Here, the parties stipulated that Obriecht is entitled to 107 days of sentence credit. Nevertheless, the majority concludes that Obriecht spent an extra 105 days in custody but can receive credit for only 42 days. Neither the record nor the arguments present a clear reason for doing so. This unnecessary reduction of sentence credit runs counter to the policies underlying sentence credit which provide that credit should be awarded for as many days in custody as possible and that a person serve no more time than that for which he is sentenced.

III

¶66 In contrast to the majority, I would not endeavor to compute the exact sentence credit that Obriecht is owed. Given the murky nature of the record and the lack of briefing on the

subject, any attempted computation is a gamble. Because there is no need to conduct such a computation to answer the question at issue in this case, I would not risk creating precedent that could be used to diminish the weighty concerns underlying sentence credit. Accordingly, I respectfully concur.

¶67 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON and Justice N. PATRICK CROOKS join this concurrence.

6