COURT OF APPEALS
DECISION
DATED AND FILED

July 8, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1297-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF4519

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT JANIEL GOINES,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before White, C.J., Geenen, and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Robert Janiel Goines appeals from his judgment of conviction for two counts of first-degree reckless homicide.  Goines argues that drug and cell phone evidence discovered inside a fanny pack in Goines's garage would not have been inevitably discovered independent of the illegal seizure and search of the fanny pack.  He also argues that his sentence credit was incorrectly calculated.  Upon review, we reject his arguments and we affirm.

## BACKGROUND

¶2     This case arises from the deaths of two women from an overdose of heroin and cocaine in West Allis on September 29, 2016.  The West Allis police investigated Goines as the supplier of the heroin found in the women's systems. The police arrested him on October 5, 2016, after a controlled buy conducted by a confidential source led to the arrest of Goines's alleged co-actor.  After Goines's arrest but before obtaining a search warrant, the police searched a fanny pack Goines had removed and left in his garage.  In the fanny pack, police found heroin, cocaine, and cell phones that were linked to drug activities.[1]  In the search warrant application and affidavit, the police included allegations about the fanny pack and its contents among other allegations.  After obtaining a search warrant, the police searched Goines's residence and found two firearms, bulletproof vests, $18,420 in cash, identifier information for Goines, and drug-related items.

---

[1] According to the criminal complaint, the search of the fanny pack showed two cell phones and two plastic baggies containing an off-white chunky substance suspected to be crack cocaine and three plastic baggies containing a grey chunky substance suspected to be heroin. Field tests conducted by police confirmed these suspicions.  The cell phone numbers were determined to be connected to drug dealing activities.

¶3      Goines moved to suppress the evidence from the fanny pack and his custodial interrogation.  Goines alleged that the fanny pack was unlawfully searched after a warrantless seizure after his arrest.  He asserted that he was cooperative during his custodial interrogation only because he knew the police already had the drugs and cell phones from the fanny pack.  In Goines's police interview, according to the criminal complaint, he discussed his personal and drug sales phone numbers, the time period he has been selling heroin and cocaine, his profits and cash on hand, how he worked with his co-actor, Lopez, and he confirmed he lived at the address where he was arrested.

¶4      Upon hearing the motion, the circuit court found the search of the fanny pack to be unlawful, but the search warrant was valid, and the search of Goines's garage was reasonable.  However, after judicial rotation, the court heard a motion for reconsideration.  The court found that the fanny pack evidence would have inevitably been discovered and denied the motion to suppress the evidence in the fanny pack and Goines's custodial statement.[2]

¶5      The case proceeded to a jury trial.[3]  The jury returned with guilty verdicts on three counts: two counts of first-degree reckless homicide, by the delivery of drugs, as a party to a crime; and one count of conspiracy to deliver

---

[2] The Honorable M. Joseph Donald presided over the original suppression hearing.  The Honorable Carolina Maria Stark presided over the second suppression hearing.  We refer to either Judge Donald or Judge Stark as the circuit court.

[3] The Honorable Mark A. Sanders presided over the jury trial and original sentencing, as well as certain postconviction proceedings, Goines's plea, and current sentencing.  We refer to Judge Sanders as the trial court.

heroin, three grams or less, as a second or subsequent offense, with the habitual criminality repeater penalty enhancer.[4]

¶6    In December 2018, the trial court imposed the following sentence: for each count of first-degree reckless homicide, 12 years of initial confinement and 8 years of extended supervision, to be served consecutively; and for the count of conspiracy to deliver heroin, 10 years of initial confinement and 5 years of extended supervision, to be served concurrently with the sentence for the first count of homicide.

¶7    Goines moved for postconviction relief, and was granted an evidentiary hearing on his claim that his trial counsel committed structural error, pursuant to *McCoy v. Louisiana*, 584 U.S. 414 (2018), by conceding Goines's guilt to the conspiracy count against Goines's wishes. Trial counsel testified that he knew Goines did not want to concede guilt on any of the counts and wanted to preserve his claim of innocence. The trial court granted Goines a new trial.

¶8    While awaiting a new trial, Goines again moved to reconsider the pretrial orders denying his motion to suppress. Goines asserted that the circuit court's inevitable discovery finding was manifest error because there was no evidence that the police actually searched the garage after the warrant was obtained.[5]

---

[4] The jury could not reach a verdict on two counts of felon in possession of a firearm. The trial court declared a mistrial on those counts.

[5] We note that the State did not introduce photographs of the fanny pack or the drugs or data from the cell phones found in the fanny pack at trial. The prosecutor stated that while the circuit court ruled before the trial that the State could introduce the evidence from the fanny pack, the prosecutor did not do so "in an exercise of caution[.]"

¶9     At a hearing on the suppression motion, the trial court heard testimony from two police detectives present at Goines's arrest and the search of the house and garage.  Both testified to actively searching the garage after the warrant was secured.  The court considered whether the search warrant application would establish probable cause if all of the information pertaining to the fanny pack and the evidence within it were struck, and concluded that the affidavit for the search warrant still stated probable cause.  The court denied the motion to suppress both the fanny pack evidence and Goines's custodial statement.[6]

¶10     Goines decided to resolve the renewed charges with a plea.[7]  After a thorough plea colloquy, Goines entered no contest pleas to both counts of first-degree reckless homicide.  The State agreed to dismiss but read in the other charges and recommend for both counts concurrent sentences of 12 years of initial confinement, with the amount of extended supervision up to the court's discretion.  The defense was free to argue any sentence.  The trial court found that Goines's pleas were entered voluntarily and intelligently and then found him guilty of the two counts of first-degree reckless homicide.

¶11     At the sentencing hearing, the trial court imposed concurrent sentences of 12 years of initial confinement and 14 years of extended supervision.  Goines filed a request for additional pretrial incarceration sentencing credit,

---

[6] The court also rejected Goines's argument that his statement was not knowing, intelligent, and voluntary because he was on heavy narcotic medication for a knee surgery that happened shortly before the arrest.  The court reviewed a recording of Goines's police interrogation and heard police testimony that Goines did not seem impaired and that the detective would not have interviewed an impaired person.

[7] The State issued an amended information again charging Goines with the same five counts as tried, which included the two weapon possession charges that had deadlocked the first jury and resulted in mistrial on those counts.

contending that the correct credit should be 2,284 days. The trial court ordered an amended judgment of conviction, which granted Goines 1,112 days of credit, which included 800 days for pretrial custody before his first sentencing and 312 days for the pretrial custody after his first convictions were vacated and before he was sentenced again. The court concluded that Goines's credit for imprisonment under an earlier sentence for the same crime, pursuant to WIS. STAT. § 973.04 (2023-24),[8] could only be applied to the first sentence, for the first homicide count because the original sentences were consecutive.[9] Goines now appeals.

## DISCUSSION

¶12    Goines makes two arguments on appeal. First, he asserts that the "inevitable discovery" doctrine should not apply to the evidence in the fanny pack.[10] Second, he contends that because his consecutive sentences from his first trial were vacated, the credit for time previously served on those consecutive sentences should apply to both of his concurrent sentences as if the previous time served had been served concurrently. Upon review, we reject both arguments.

*I.    Inevitable discovery*

---

[8] All references to the Wisconsin Statutes are to the 2023-24 version.

[9] The credit for time served under an earlier sentence was not calculated in the record, but Goines was confined in prison from December 14, 2018, until his sentence was vacated on March 18, 2022, and he was released on March 28, 2022. Goines calculates this time as both 1,190 or 1,191 days at different points. Nonetheless, the exact dates and days of credit for time served is not necessary to analyze his claims.

[10] Although Goines entered no contest pleas in the second proceeding, WIS. STAT. § 971.31(10) allows him to challenge an order denying a motion to suppress before his pleas.

6

¶13  Goines argues that the trial court erred when it found that the fanny pack evidence would have been inevitably discovered and therefore, the evidence should have been suppressed.  He asserts that if the allegations about the evidence from the fanny pack were struck from the search warrant application, there would be no probable cause to believe that drugs and drug-related paraphernalia would be found in the garage.  Further, he contends that all evidence that flowed from the unlawful search of the fanny pack, which he argues includes his custodial statement to police, should be suppressed.

¶14  "This court reviews a motion to suppress under a two-prong analysis."  *State v. Felix*, 2012 WI 36, ¶22, 339 Wis. 2d 670, 811 N.W.2d 775. "We review a [trial] court's findings of facts under the clearly erroneous standard, with the court acting as the ultimate arbiter of witness credibility."  *State v. Anker*, 2014 WI App 107, ¶10, 357 Wis. 2d 565, 855 N.W.2d 483 (citations omitted).  We independently review the trial court's application of constitutional principles to the findings of fact.  *State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920.  Whether police conduct violated a defendant's constitutional rights presents a question of constitutional fact that this court independently reviews. *Felix*, 339 Wis. 2d 670, ¶22.

¶15  The United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"  U.S. CONST. amend. IV; WIS. CONST. art. I, § 11.  "Unless an exception applies, a search without a warrant is per se unreasonable."  *Smiter*, 331 Wis. 2d 431, ¶10.  "[T]he 'fruit of the poisonous tree' doctrine requires the exclusion of the evidence obtained by exploitation of an illegal search and seizure[.]"  *Muetze v. State*, 73 Wis. 2d 117, 130, 243 N.W.2d 393 (1976).  However, evidence obtained during an illegal

search "may be admissible if the tainted evidence would have been inevitably discovered by lawful means." *State v. Jackson*, 2016 WI 56, ¶47, 369 Wis. 2d 673, 882 N.W.2d 422 (citation omitted).

¶16 While the general rationale to exclude tainted evidence acquired through police misconduct, as well as evidence derived from that evidence, is to "deter police from violations of constitutional and statutory protections[,]" the "[e]xclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." *Nix v. Williams*, 467 U.S. 431, 442-43, 446 (1984). The United States Supreme Court thus stated that "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means … then the deterrence rationale has so little basis that the evidence should be received." *Id.* at 444.

¶17 After examining the record and evidence presented over the three suppression hearings, we conclude that the State has met its burden to show by a preponderance of evidence that the police "would inevitably have discovered the physical evidence in [Goines's] garage without" having relied on the evidence discovered in the fanny pack in the search warrant application. *See Jackson*, 369 Wis. 2d 673, ¶75.

¶18 Like the trial court in the final suppression hearing, "we consider untainted portions of the search warrant affidavit."[11] *Id.*, ¶77. Without determining whether the fanny pack search was lawful or not, we will presume for purposes of this analysis that fanny-pack-related portions of the application were "tainted." Our review shows the following untainted facts:

- The police were investigating a drug dealer connected to the overdose deaths of two women, Shannon Fleming and Shanon DeGeorge-Hill on September 29, 2016, at the apartment of Kevin Smith.

- Sara Haugen, Smith's girlfriend, used Smith's phone to arrange a heroin sale from her supplier.

- Smith, Haugen, Fleming, and DeGeorge-Hill were all injected with the heroin that Haugen arranged to buy.

- Haugen, in a *Mirandaized*[12] interview after her arrest, told police about arranging a heroin sale with her drug supplier, Goines, who connected her with Evelyn Lopez for the actual sale and delivery. Haugen identified Goines and Lopez by photograph and phone number.

---

[11] The record reflects that the search warrant described the "objects of search" as heroin; cocaine; scales and items to package heroin for sale; drug-related paraphernalia, records, and money; documents to show control of the premises, weapons, cellular phones, and two vehicles identified by license plate. The warrant also specifically authorizes the search of the house, all persons on the premises, attic, basement, detached garage, vehicles, certain goods, chattels, and property.

[12] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- Police drug trafficking intelligence resources corroborated the phone numbers Haugen supplied for Goines and Lopez.

- On September 30, 2016, police arranged a controlled buy of heroin using a confidential source. The source was in contact with Goines by his known cell phone. Goines informed the source that Lopez would deliver the heroin.

- At the controlled buy location, the police arrested Lopez, who was found with drugs and the cell phone associated with drug sales. In the search incident to Lopez's arrest, police found $1,290 in cash, 3.63 grams of heroin, and 2.08 grams of cocaine, on her person and in her purse.

- The police investigation revealed the location of Goines's suspected residence, and they observed him at that address on October 5.

- Goines shut himself in the garage when pursued by the police, who were identified by words and clothing. Goines was arrested when he exited the garage.

- In the search incident to Goines's arrest, a piece of paper with Lopez's name on it and a Milwaukee County Jail transaction receipt with Lopez's name was found inside his pockets.

- Goines's wife refused to answer the door when the police knocked.

- When Goines's wife did open the door, their dog and infant child inside the house were secured, and the police performed a protective sweep of the house.

- The police found plain pill bottles in the kitchen sink. The bottles were empty and appeared to be washed out.

- The police found a bulletproof vest upstairs in plain view.

- Goines had prior felony convictions.

¶19 Based on the untainted portions of the affidavit, we conclude that the search warrant application provided probable cause to conduct a search of Goines's residence, which includes the garage. *Jackson*, 369 Wis. 2d 673, ¶79. "A search warrant affidavit provides probable cause for a search when, under the totality of the circumstances, it sets forth 'a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing.'" *Id.* (quoting *State v. Romero*, 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756).

¶20 Goines was under investigation for suspected drug dealing, either directly or by supplying drugs to Lopez for sale. The police had already arrested Haugen and Lopez. Haugen had identified Goines as her supplier. The police had Goines under surveillance. When they approached Goines the day of his arrest, the fanny pack came to the attention of the police only when Goines removed it in the garage while attempting to evade the police. The fanny pack was not part of the investigation prior to Goines removing it while evading police.

¶21 Having concluded that the police had probable cause to obtain a search warrant without the evidence from the fanny pack, we conclude that the fanny pack evidence would have been inevitably discovered in the search of the premises. The detectives' testimony at the final suppression hearing confirmed that the police actually searched the garage. The trial court's findings that the

detectives were credible and worthy of belief is not clearly erroneous. *See Anker*, 357 Wis. 2d 565, ¶10. Therefore, we conclude that the fanny pack, which was in plain view on the garage floor, would have been found, searched, and the evidence lawfully seized.

¶22 Goines argues that the search warrant only establishes probable cause that he was involved in drug transactions that were wholly unrelated to his home, although he concedes that the bulletproof vest found in plain view in the house might establish probable cause to search the home. Goines asserts that it is not reasonable to infer that he had drugs in his house, much less in his garage.

¶23 Goines's framing of the argument attempts to separate the reasonableness of the garage search and the house search. However, neither the law nor the evidence support dividing the analysis this way. "Whether there is probable cause to believe that evidence is located in a particular place is determined by examining the 'totality of the circumstances.'" *State v. Ward*, 2000 WI 3, 231 Wis. 2d 723, 736, 604 N.W.2d 517 (citation omitted). The search warrant application included a statement that, in the detective affiant's "training and experience, affiant knows that controlled substances can be secreted in any part of a residence including garages, vehicles and storage areas related to the premises and on persons engaged in drug trafficking[,]" and that the police were investigating Goines as a drug dealer and supplier. Because the warrant established that Goines was a person suspected of drug trafficking, it was not only reasonable but logical to obtain a search warrant for Goines's residence including the garage or other contained spaces on the property.

¶24 Further, although Goines argues there was no specific connection to the garage, he provides no legal authority for that differentiation. "A lawful

search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982). The record reflects that the police observed Goines, the subject of their surveillance, enter the garage wearing a fanny pack and exit without it. It defies any reasonable belief that if the police had sought a search warrant before searching the fanny pack that they would not have returned to the garage when the warrant was issued.

¶25 Here, the State has demonstrated that, without considering the fanny pack evidence, the police had probable cause to search Goines's residence, which included the garage, and that in the lawful search of that residence, the fanny pack evidence would have inevitably been discovered. Therefore, we conclude that the motion to suppress was properly denied.

## II. *Sentence credit*

¶26 Goines argues that he should be credited with the time he served from his first judgment of conviction, the WIS. STAT. § 973.04 credit. He argues that the trial court imposed concurrent sentences for the two counts of first-degree reckless homicide; therefore, it would be unfair for him to remain incarcerated longer on the second count than the first. Goines argues that because the Department of Corrections (DOC) and the court applied the credit for time served on an earlier sentence for the same crime only to the first count, he will spend almost 16 years incarcerated when the court intended for him to only serve 12 years. Goines argues that the convictions were for the same crimes and the credit he seeks arose from the same vacated sentences.

13

¶27    Goines argues that he had been in custody for 2,313 days as of the date of his second sentencing, and that credit should apply to both counts because he is imprisoned on concurrent sentences. The dispute here arises out of credit for time served from December 14, 2018, to March 28, 2022, from when he was sentenced and incarcerated until his convictions were vacated.[13] Sentence credit for time previously served is governed by WIS. STAT. § 973.04, which provides that "[w]hen a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the department shall credit the defendant with confinement previously served."

¶28    To resolve this issue, this court must interpret WIS. STAT. § 973.04. Statutory interpretation is a question of law that this court independently reviews. *State v. Lamar*, 2011 WI 50, ¶22, 334 Wis. 2d 536, 799 N.W.2d 758. Statutory interpretation begins with the plain meaning of the statute. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶29    "The operative language of [WIS. STAT.] § 973.04—that the defendant shall be credited 'with confinement previously served'—must be interpreted in light of the nature of the particular sentences imposed." *Lamar*, 334 Wis. 2d 536, ¶35. Here, Goines's original sentences were consecutive: 12 years of initial confinement for the first homicide count, and 12 years of initial confinement for the second homicide count. In the "confinement previously

---

[13] There is no dispute over the number of days Goines spent in pretrial custody—in this case, 800 days from October 5, 2016, to December 14, 2018, when he was originally sentenced, and 312 days from March 28, 2022, to February 3, 2023, when he was resentenced and began serving his current term of imprisonment. The trial court amended the judgment of conviction and DOC applied the 1,112 days of sentence credit to both sentences.

served," Goines served approximately 39 months on the first sentence and no time on the second sentence. *See* § 973.04.

¶30 When Goines's original convictions were vacated, he was entitled to sentence credit only on the "confinement previously served" against his first sentence because he had not begun serving the second sentence. WIS. STAT. § 973.04. "[W]hen sentences are consecutive, sentence credit is not issued to more than one sentence so long as the first sentence to be served is sufficient to receive the sentence credit at issue." *State v. Obriecht*, 2015 WI 66, ¶36, 363 Wis. 2d 816, 867 N.W.2d 387. For consecutive sentences, "the custody first imposed should be applied to the sentence first imposed[.]" *Id.*, ¶37. The calculation of sentence credit is made on "a day-for-day basis, which is not to be duplicatively credited to more than one of the sentences imposed to run consecutively." *State v. Boettcher*, 144 Wis. 2d 86, 87, 423 N.W.2d 533 (1988).

¶31 Although Goines finds it unfair that concurrent 12-year sentences may take him approximately 16 years to complete, the plain language of the statute requires that sentence credit for earlier imprisonment only applies to the same crime. Goines's original incarceration was served against the first homicide conviction. When he was resentenced, his earlier time served could only be credited to "a new sentence … for the same crime"—here, the first homicide count. WIS. STAT. § 973.04. To decide otherwise would violate the general rule in Wisconsin that "dual credit is not permitted—that the time in custody is to be credited to the sentence first imposed—and that, where the sentences are consecutive, the total time to be served is thus reduced by the number of days in custody as defined" by the statutes. *Boettcher*, 144 Wis. 2d at 87. Accordingly, we discern no error in the calculation of his sentence credit.

**CONCLUSION**

¶32     For the reasons stated above, we conclude that the motion to suppress was properly denied because the fanny pack evidence would have inevitably been discovered in a lawful manner.    Further, we conclude that Goines's sentence credit was properly calculated.

*By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.