STATE of Wisconsin, Plaintiff-Respondent,

v.

Tracy SMITER, Defendant-Appellant.

Court of Appeals

*No. 2010AP599–CR. Submitted on briefs November 2, 2010.
—Decided December 28, 2010.*

2011 WI App 15

(Also reported in 793 N.W.2d 920.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Maayan Silver* of *Gamiño Law Office, LLC*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. Tracy Smiter appeals from a judgment, entered after he pled guilty to possession of cocaine with intent to deliver. He argues, pursuant to *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710 (2009),[1] that police officers illegally searched his vehicle after arresting him for possession of marijuana, and that the circuit court erred when it denied his motion to suppress the additional drugs discovered during the search. Because we conclude that the police officers "reasonabl[y] . . . believe[d] the vehicle contain[ed] evidence of the offense of arrest," that is, possession of marijuana, we affirm. *See id.* at 1723.

## BACKGROUND

¶ 2. On April 9, 2008, four Milwaukee police officers were parked in an unmarked police car in the area of 13th Street and West Chambers Street in the City of Milwaukee. Two of the officers, Officer John Schott and Detective Willie Huerta, observed a gray Buick Roadmaster turn onto West Chambers Street without using

---

[1] The Wisconsin Supreme Court in *State v. Dearborn*, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97, adopted *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710 (2009), "as the proper interpretation of the Wisconsin Constitution's protection against unreasonable searches and seizures." *Id.*, ¶ 3.

its turn signal. As the Buick passed the unmarked police car, Officer Schott and Detective Huerta also noticed that the Buick's rear registration stickers were not properly affixed on the license plate. Officer Schott, the driver of the unmarked police car, activated the car's lights and effectuated a traffic stop of the Buick. Officer Schott and Detective Huerta approached the Buick.

¶ 3. Upon approaching the Buick, Detective Huerta noticed the front passenger, Smiter, reach under the front passenger's seat and then throw an object that resembled a cigar out the front passenger's window of the Buick. The police officers asked Smiter to step out of the Buick and he did. Detective Huerta then recovered the object, which he observed was a damp cigar wrapper filled with a green plant-like substance. Based on Detective Huerta's training and experience, he concluded that the substance was consistent with marijuana. Detective Huerta then placed Smiter under arrest for possession of marijuana.

¶ 4. Following the arrest, the police officers searched the Buick for additional controlled substances. The search revealed fifty-three individually wrapped corner cuts of cocaine under Smiter's seat.

¶ 5. On April 13, 2008, the State filed a criminal complaint, charging Smiter with possession with intent to deliver a controlled substance, cocaine. On February 13, 2009, Smiter moved to suppress the evidence obtained from the search, arguing that the police lacked reasonable suspicion to stop the Buick. After a motion hearing at which Officer Schott and Detective Huerta testified, the circuit court denied the motion to suppress, and set a trial date.

¶ 6. On April 27, 2009, before trial, Smiter asked the circuit court to consider a motion to suppress pursuant to *Gant*, which the United States Supreme

Court had decided less than a week prior. The circuit court granted Smiter leave to file a *Gant* motion. Smiter filed the motion and following a hearing, the circuit court denied the motion, concluding that *Gant* did not apply because the police had probable cause to believe that the Buick contained evidence of a crime.

¶ 7. Following the circuit court's denial of his motion to suppress, Smiter pled guilty to possession of cocaine with intent to deliver. This appeal follows.

## DISCUSSION

¶ 8. While Smiter concedes that police officers had probable cause to arrest him after recovering the marijuana blunt he threw from the front passenger's window of the Buick, he argues that, under *Gant*, the police officers were prohibited from searching the Buick because they lacked reason to believe that the Buick contained evidence relevant to Smiter's arrest. Consequently, he argues that the circuit court erred in denying his motion to suppress. We disagree.

¶ 9. To begin, we note that in most instances, a defendant who pleads guilty waives all nonjurisdictional defects and defenses. *See County of Racine v. Smith*, 122 Wis. 2d 431, 434, 362 N.W.2d 439 (Ct. App. 1984). However, WIS. STAT. § 971.31(10) (2007–08)[2] makes an exception to this rule, which allows appellate review of an order denying a motion to suppress evidence, notwithstanding a guilty plea. *Smith*, 122 Wis. 2d at 434–35. When we review a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the circuit court's findings of fact. *State v. Vorburger*, 2002 WI 105, ¶ 32, 255

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

Wis. 2d 537, 648 N.W.2d 829. However, we review the circuit court's application of constitutional principles to the findings of fact *de novo. Id.* Further, we are not constrained to the circuit court's reasoning in affirming or denying its order; instead, we may affirm the circuit court's order on different grounds. *See Mercado v. GE Money Bank*, 2009 WI App 73, ¶ 2, 318 Wis. 2d 216, 768 N.W.2d 53.

██

¶ 10. The Fourth Amendment to the United States Constitution and article I, section eleven of the Wisconsin Constitution both protect citizens from unreasonable searches. Unless an exception applies, a search without a warrant is *per se* unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967). In *Gant*, the Supreme Court held that, incident to a lawful arrest, police officers may search a vehicle without a warrant when: (1) "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or (2) "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Gant*, 129 S. Ct. at 1719 (citing *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)); *see also State v. Dearborn*, 2010 WI 84, ¶ 26, 327 Wis. 2d 252, 786 N.W.2d 97.

¶ 11. Here, it is uncontested that, at the time the police officers searched under the front passenger's seat of the Buick, Smiter was already under arrest for possession of marijuana, and the State does not argue that Smiter was "within reaching distance" of the Buick when the search was performed. Therefore, our analysis focuses on whether the police officers reasonably believed that the Buick contained " 'evidence relevant to the crime of arrest.' " *See Gant*, 129 S. Ct. at 1719 (citation omitted).

¶ 12. In *Gant*, the defendant was arrested for traffic violations, and, therefore, the Court did not explore whether the police officers who subsequently searched the defendant's vehicle had reason to believe that "evidence relevant to the crime of arrest might be found in the vehicle." *Id.* However, when noting that such a reasonable belief would justify a vehicle search, the Court cited to both *New York v. Belton*, 453 U.S. 454 (1981), and *Thornton*, as cases in which "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, 129 S. Ct. at 1719.

¶ 13. The defendants in *Belton* and *Thornton*, like Smiter, were both pulled over for traffic offenses and then arrested for drug crimes before police officers searched their vehicles and discovered other incriminating evidence. *See Belton*, 453 U.S. at 455–56; *Thornton*, 541 U.S. at 617–18. In other words, in both instances, because the defendants were lawfully arrested for drug offenses, the Court concluded in *Gant* that it was reasonable for police officers to believe that further contraband or similar evidence relevant to the drug crimes for which the defendants were arrested might be found in the defendants' vehicles. *See Gant*, 129 S. Ct. at 1719.

¶ 14. Here, Smiter contends that his arrest for possession of a marijuana blunt did not form a reasonable basis on which the police officers could conclude that additional contraband or relevant evidence of marijuana possession would be found in the Buick. More specifically, Smiter argues that the police officers: (1) did not smell marijuana burning and, therefore, had no reason to believe more drugs would be found in the Buick; and (2) already had the marijuana blunt and, therefore, possessed all of the evidence

necessary to charge him with the offense of his arrest and did not need to search the Buick. We do not find these arguments persuasive.

■

¶ 15. First, a police officer does not need to smell marijuana burning inside a vehicle in order to form a reasonable basis that additional drugs or evidence may be located inside a vehicle. In *Thornton*, the police officer discovered "two individual bags, one containing three bags of marijuana and the other containing a large amount of crack cocaine" on the defendant's person during a *Terry* search[3]; he did not smell burning marijuana. *Thornton*, 541 U.S. at 618. But the Court in *Gant* concluded that the mere discovery of the drugs in Thornton "suppl[ied] a basis for searching the passenger compartment of [the] arrestee's vehicle." *See Gant*, 129 S. Ct. at 1719. We conclude similarly here.

¶ 16. Second, Smiter's argument that *Gant* prohibited the police officers from searching the Buick for additional evidence relevant to his arrest for marijuana possession because the police officers already had the blunt and, therefore, enough evidence on which to arrest him, is nonsensical. *Gant* expressly permits searches for evidence relevant to the crime of arrest and does not require police to stop that search once *some* evidence is found.[4] *See id.* at 1719 (authorizing a search of a vehicle "incident to a recent occupant's arrest").

---

[3] *See Terry v. Ohio*, 392 U.S. 1 (1968).

[4] That *Gant* applies only to searches incident to a lawful arrest distinguishes it from *United States v. Ross*, 456 U.S. 798 (1982), which Smiter relies on for his incorrect assertion that probable cause was required to search the vehicle here. *See id.* at 823–24 (permitting a warrantless search of an automobile when police officers have probable cause that the vehicle contains contraband).

¶ 17. Moreover, here, the police officers had additional reasons to believe the Buick contained evidence relevant to the offense of the arrest, namely, possession of marijuana. First, upon approaching the vehicle, Detective Huerta noticed Smiter reach under the front passenger's seat, consistent with trying to hide something. Next, when Detective Huerta picked up the marijuana blunt that Smiter had thrown from the Buick Detective Huerta noted it was damp "consistent with someone putting it in their mouth and moistening it." The dampness suggested to Detective Huerta that the blunt had been recently wrapped, and further suggested that perhaps there was a larger source of marijuana somewhere in the Buick.

¶ 18. Because Smiter was arrested for a drug offense, and because the police officers had additional reasons to believe relevant evidence of the drug offense may be located in the Buick—including Smiter's furtive movements and the damp marijuana blunt—we conclude that the search of the Buick was authorized by *Gant*. Therefore, the search was lawful, and we affirm the circuit court's order denying Smiter's motion to suppress.

*By the Court.*—Judgment affirmed.