COURT OF APPEALS
DECISION
DATED AND FILED

December 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1674-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF22

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JAMES D. KONZ,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. James Konz appeals from a judgment of conviction entered on his no contest plea to operating with a restricted controlled substance, seventh offense. Specifically, he contends the circuit court erred in denying his motion to suppress evidence, which motion asserted the arresting deputy lacked probable cause to arrest him following a traffic stop and thus, the results of the subsequently obtained blood draw must be suppressed. Because we conclude the deputy did have probable cause, we affirm.

## Background

¶2 According to the testimony of the arresting deputy at the hearing on Konz's suppression motion, the deputy was dispatched based upon a complaint of a blue truck nearly striking the vehicle of an anonymous complainant. Locating the described vehicle, the deputy followed and observed it for some time. Although the deputy noticed no erratic driving, he nonetheless effected a traffic stop because the truck's registration was expired.

¶3 The deputy learned that the operating privilege of the driver and lone occupant of the truck, Konz, had been revoked; Konz had five prior OWI convictions; he was legally required to have an ignition interlock device (IID) installed in the truck; despite that requirement, he had no IID in the truck; and there were two warrants for him. In communicating with Konz, the deputy observed him to be "speaking a little fast," although the deputy acknowledged he did not "know what [Konz's] normal tempo of speech is." Referring to notations he made on the "Alcohol Drug Influence Report" he had filled out at the hospital while Konz was having his blood drawn, the deputy agreed he had written on the report "[f]ast, twitchy body movements" in a section asking about physical observations of the arrestee/Konz. The deputy testified that Konz's body

movements in this regard appeared to be "abnormal." In another section of the report, the deputy had written that "[d]rug paraphernalia, fast speech" had first led him to suspect Konz was under the influence of some substance.

¶4 The deputy did not smell any drugs emitting from the vehicle, but after making initial contact with Konz, the deputy requested a drug dog to do a sniff around the vehicle. Because the dog "indicated on the vehicle for the scent of narcotics," the truck was searched, which "yielded some drug paraphernalia." Specifically, the search yielded a find of "three metal tubes with burnt ends, and then a scouring pad material, which is commonly used along with metal tubes to smoke certain narcotics." A second deputy, who assisted the dog in its performance of the sniff around the vehicle and subsequently searched the inside of the vehicle, testified that he did not recall any particular odors catching his attention but described the find from the truck as being "three pipes with burnt residue and some Chore Boy or wire mesh that I commonly see with cocaine or crack use" in a bag on the front bench seat of the truck.

¶5 The arresting deputy had Konz perform field sobriety tests (FSTs). The deputy observed no indicators of impairment on the horizontal gaze nystagmus (HGN) test,[1] but on both the walk-and-turn and one-leg-stand tests, the deputy observed "several clues … which would more than likely lead me to believe that [Konz] was impaired by some substance that's not alcohol." On the walk-and-turn test, Konz was unable to stand "as instructed," standing "with his feet broken apart instead of heel-to-toe." Additionally, "[u]pon doing the walking

---

[1] The deputy testified that the HGN test is used to observe the potential impact of alcohol and one additional "class" of drug. He additionally testified that a person "can still be impaired without showing clues on [the HGN] test."

part of the test … he stepped off line," "missed heel to toe," and "also performed an improper turn." Inconsistent with the instructions he had been given, on the one-leg-stand test, Konz "hopped, he put his foot down, he used his arms for balance, and also swayed while balancing." The deputy also had Konz perform "a modified Romberg test."[2] The deputy could not recall how Konz performed on that test, but he testified he was "not sure it affected" his suspicions of impairment one way or another. A preliminary breath test administered to Konz showed a result of 0.00. Based on the totality of the information of which the deputy was aware, he concluded Konz was "impaired by some substance" and thus "unsafe to operate a vehicle," and the deputy placed him under arrest for operating while impaired. Konz was taken to a hospital for a blood draw, the results of which he sought to suppress with his suppression motion.

¶6      The circuit court had no concerns with the credibility of the two deputies' testimony and determined they had probable cause to arrest Konz and ultimately procure the blood draw.

*Discussion*

¶7      "When we review a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the circuit court's findings of fact. However, we review the circuit court's application of constitutional principles to the findings of fact de novo." *State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010) (citation omitted).

---

[2] On cross-examination, the deputy testified that he did not believe he was certified at the time of Konz's arrest in this "different type of standard field sobriety testing"—the modified Romberg test—which required "[e]xtra training."

¶8     Probable cause "must be assessed on a case-by-case basis," ***State v. Lange***, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551, and considers "the totality of the circumstances within the arresting officer's knowledge at the time of the arrest," ***State v. Nordness***, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). To constitute probable cause, the evidence of which law enforcement is aware

> must amount to "more than a possibility or suspicion that the defendant committed an offense," the evidence required to establish probable cause "need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." It is sufficient that the evidence known to [law enforcement] would lead a reasonable police officer to believe that the defendant probably was under the influence of an intoxicant while operating his vehicle.

***Lange***, 317 Wis. 2d 383, ¶38 (footnote omitted). Whether an officer had probable cause to arrest a person is a question of law we review de novo. ***Washburn County v. Smith***, 2008 WI 23, ¶16, 308 Wis. 2d 65, 746 N.W.2d 243.

¶9     Here, we agree with the circuit court that the arresting deputy had probable cause to arrest Konz and pursue the blood draw. The deputy had received a report that Konz had almost struck another vehicle.[3] The deputy quickly learned of Konz's penchant for breaking the law from the expired registration on the truck, the revocation of Konz's driving privileges, two warrants for Konz's arrest, his failure to install a legally required IID, and, most importantly, his five prior OWI convictions, which convictions additionally

---

[3] In his brief-in-chief, Konz states, "[W]hile the anonymous complainant alleged that their vehicle had nearly been struck, nothing corroborated this conclusory allegation." What matters for our review is the information of which the deputy was aware. Here, the deputy was aware that a motorist had called to complain that Konz had almost struck the caller's vehicle. Konz did not develop, either before the circuit court or us, any legal argument challenging the deputy's or the circuit court's reliance on the information the deputy received (via dispatch) from this caller.

informed the deputy that Konz had a serious substance abuse problem and was not adverse to unlawfully driving a vehicle after consuming impairing substances. The deputy observed Konz to have "fast speech" and "[f]ast, twitchy body movements," which movements the deputy found "abnormal." A drug dog then detected "the scent of narcotics" emitting from the vehicle. Drug paraphernalia used "to smoke certain narcotics" and "commonly [associated] with cocaine or crack use," as the arresting deputy and second deputy respectively testified, had "burnt residue" and was located on the front bench seat of the truck.

¶10    Konz emphasizes that while the police found drug paraphernalia in the truck, they "did not find any drugs." Because the drug paraphernalia contained "burnt residue," however, this point actually supports a probable cause determination. Where there is "burnt" drug residue on drug paraphernalia but no consumable drugs located, a most reasonable inference is that drugs have been *consumed* with the use of the paraphernalia. Konz, again, was the lone occupant in the truck, and the K-9 deputy testified that the particular paraphernalia found in the truck was paraphernalia he "commonly see[s] with cocaine or crack use." While, by itself, the paraphernalia found inside the truck would not indicate when consumption of the related drugs may have taken place, in light of the report from the caller about almost being struck by Konz, the deputy's observations of Konz's performance on the walk-and-turn and one-leg-stand tests, and Konz' "fast speech" and "[f]ast, twitchy body movements," a reasonable officer would

6

conclude that the consumption had occurred recently enough that the drugs were impairing him at the time of driving and during the FSTs.[4]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).

---

[4] Konz also points out that the deputies "did not notice any odors indicative of recent drug use." This point is unhelpful, because while an odor of a particular, known illegal substance would have established probable cause by itself, *State v. Secrist*, 224 Wis. 2d 201, 210, 589 N.W.2d 387 (1999), there was no evidence presented that any particular type of drug that would be used in conjunction with the particular paraphernalia found in the truck would emit an odor detectable by humans. That said, the evidence was that the trained drug dog detected "the scent of narcotics."