COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP611-CR**

Cir. Ct. No. 2019CF370

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SEAN MCFARLIN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: BRAD SCHIMEL, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Sean McFarlin appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI), fourth offense, entered after a jury trial. He contends the circuit court erred in denying his motion to suppress evidence. For the following reasons, we conclude the court did not err.

## Background

¶2    On March 6, 2019, McFarlin was arrested for OWI. He was subsequently charged with OWI, fourth offense, as well as operating a motor vehicle with a prohibited alcohol concentration (PAC) of more than .02, fourth offense. McFarlin filed a motion to suppress evidence. The circuit court held a hearing at which the arresting deputy was the only witness to testify. The deputy provided the following relevant testimony.

¶3    At approximately 2:19 a.m. on March 6, 2019, the deputy was dispatched to a dead-end area of McLaughlin Road due to a report of a possible intoxicated driver in that area. The deputy had been advised by dispatch that fire department personnel had followed a driver to that area after observing the driver "going back and forth between the lanes." Near the dead-end area of McLaughlin Road, the fire personnel observed the driver "sitting in the vehicle without the vehicle moving" and then "exit the vehicle and walk[] toward the ambulance with his hands up in the air kind of saying, what's going on." The fire personnel backed up and eventually left the area.

¶4    The fire personnel had provided the license plate number of the vehicle and a physical description of it—a gold Grand Am. When the deputy checked on the license plate number, it "c[a]me back to a Grand Am" owned by Sean McFarlin at an address "literally a couple of feet from the area that fire personnel were at on McLaughlin Road."

2

¶5     When he arrived at McFarlin's address, the deputy observed the gold Grand Am with the reported license plate number parked in the driveway and saw "fresh footprints"[1] in the snow "coming from the driver's side of the vehicle going to the residence," which was a trailer with an attached porch. As the deputy walked toward the residence, he touched the hood of the Grand Am and "could feel that the engine was warm." He stated that the outside temperature "was pretty cold. So it indicated that the vehicle had been running very recently."

¶6     The deputy rang the doorbell on the outside of the porch and then "hear[d] somebody talking inside and it sounded like somebody had either fallen or stumbled against something." When a man, McFarlin, came to the door and asked who was there, the deputy explained who he was and that he "needed to speak with him." The deputy "asked [McFarlin] if he would be willing to step outside of his residence and speak with me. He subsequently did."

¶7     Speaking with McFarlin, the deputy smelled intoxicants "emitting from his breath" and observed his eyes to be glassy and bloodshot. McFarlin's "speech was pretty slurred," "he was very lethargic when speaking," and "he was having difficulty standing and just staying in one spot as he was swaying while speaking with me." McFarlin initially denied having consumed alcohol that day but later admitted he had been drinking.

¶8     McFarlin also admitted owning the Grand Am but denied having driven it since returning home at 4:00 p.m. When the deputy informed McFarlin that the hood of the Grand Am was warm and asked him if he could explain that,

---

[1] The deputy explained that he could tell the footprints were fresh because "when you're stepping in the snow when the person lifts their foot like fresh snow … it's not glossed over. It's not shiny from heat melting the snow."

"he stated he could not." When the deputy confronted him about the fresh footprints in the snow, McFarlin "said he could not answer that." McFarlin admitted to the deputy that no one else was at the residence.

¶9 The deputy detained McFarlin for further investigation. Because of the cold temperature and the snow on the ground, the deputy took him, after handcuffing him and placing him in the squad car, to a sheriff's substation three miles away. The deputy "advised [McFarlin] that he was not under arrest but was still being detained" for further OWI investigation. McFarlin eventually was arrested and charged with OWI.

¶10 On cross-examination, the deputy reiterated that the fire department personnel had "indicated that [McFarlin] was unable to maintain the vehicle in the lane and was swerving between lanes." The deputy indicated that in addition to observing fresh footprints, he had also observed fresh "tire tracks" in the snow on McFarlin's driveway. The deputy testified that when McFarlin stepped out of his trailer to speak with the deputy, he had come "out to the porch area."

¶11 When McFarlin eventually admitted to drinking, he indicated he had been drinking at home and was not drunk. The deputy agreed he "d[id]n't know at this point if [McFarlin] was so impaired as to be rendered unable to safely operate a motor vehicle." At the time he approached the trailer, the only descriptor of the driver of the Grand Am relayed from the fire personnel to the deputy was that the driver was male.

¶12 The circuit court denied McFarlin's suppression motion, concluding McFarlin was not arrested or in custody when he was transported to the substation but that he was only temporarily detained and the detention was supported by reasonable suspicion that he had operated a motor vehicle while intoxicated. The

court further determined that at the time the deputy detained McFarlin, the deputy "had enough for probable cause to make a formal arrest."

¶13 At McFarlin's jury trial 2 years later, the deputy testified that he passed the fire department personnel near and en route to McFarlin's home, getting to the home approximately 15 seconds after passing them and eventually making contact with McFarlin at his residence around 2:30 a.m. The deputy stated there was only one set of footprints leading from the Grand Am to the trailer. When McFarlin agreed to step outside of the trailer and into the porch area to speak with the deputy, the deputy "asked if we could come in" to the porch area. The deputy further testified that he heard no other movement inside the trailer while speaking with McFarlin and that he asked McFarlin "if there was any other registered owner [of the Grand Am] or anybody else who used that vehicle," and McFarlin "said no."

¶14 The jury found McFarlin guilty of OWI, fourth offense, and PAC, fourth offense. The circuit court dismissed the PAC charge by operation of law. McFarlin was subsequently sentenced and now appeals, challenging the court's denial of his suppression motion.

### *Discussion*

¶15 McFarlin claims he was unconstitutionally seized because "law enforcement did not have probable cause to arrest him" and "reasonable suspicion is not sufficient to seize a person from his home or its curtilage," here the porch area. Because we conclude the deputy did have probable cause to arrest McFarlin when he seized him, we affirm.

¶16 "When we review a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the circuit court's findings of

fact. However, we review the circuit court's application of constitutional principles to the findings of fact de novo." *State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010) (citation omitted).

¶17    As our supreme court has stated:

> Warrantless arrests are unlawful unless they are supported by probable cause. "Probable cause to arrest ... refers to that quantum of evidence within the arresting officer's knowledge at the time of the arrest that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle [at a prohibited alcohol concentration]." "The burden is on the state to show [it] had probable cause to arrest."

> In determining whether probable cause exists, we examine the totality of the circumstances and consider whether the police officer had "facts and circumstances within his or her knowledge sufficient to warrant a reasonable person to conclude that the defendant ... committed or [was] in the process of committing an offense." The probable cause requirement "deals with probabilities" and must be sufficient "to lead a reasonable officer to believe that guilt is more than a possibility." This standard is case-specific: "[t]he quantum of information which constitutes probable cause to arrest must be measured by the facts of the particular case."

*State v. Blatterman*, 2015 WI 46, ¶¶34-35, 362 Wis. 2d 138, 864 N.W.2d 26 (alterations in original; footnote omitted; citations omitted).

¶18    At the time the deputy handcuffed McFarlin and transported him to the substation by squad car, the deputy was aware of the following. Fire department personnel had reported observing a male in a gold Grand Am swerving between lanes around 2:19 a.m., so around bar time. Though just feet from his residence, rather than simply parking at the residence and going inside, the individual made the unusual move of stopping just short, "sitting in the vehicle" without moving,

6

and then walking towards the fire personnel with "his hands up in the air kind of saying, what's going on."

¶19     The deputy passed the fire personnel when nearing the trailer where the gold Grand Am, with a license plate that matched the plate called in by the fire personnel, was found parked moments later. The Grand Am was registered to McFarlin at the address just feet away from where the male driver of the Grand Am had stopped to confront the fire personnel.

¶20     The deputy observed fresh tire tracks in the snow as well as a single, fresh set of footprints that went from the driver's side of the vehicle to the trailer. Despite the temperature outside being "pretty cold," the hood of the vehicle was warm, indicating it "had been running very recently."

¶21     The deputy rang the doorbell and then heard a single, male-sounding voice inside and what sounded like somebody falling or stumbling. After McFarlin stepped out onto the porch, the deputy heard no one else inside the trailer, and McFarlin stated no one else was there.

¶22     The deputy smelled intoxicants coming from McFarlin's breath and observed his eyes to be glassy and bloodshot and his speech to be "pretty slurred" and lethargic. McFarlin had difficulty standing and staying in one spot, and he was swaying while speaking with the deputy.

¶23     McFarlin admitted to owning the Grand Am and told the deputy nobody else uses it, but he denied having driven it "since 4:00 p.m."; yet, he could not explain why the hood of the vehicle was warm or why there was a single set of fresh footprints leading from the driver's side of the vehicle to the trailer. McFarlin

also denied having consumed alcohol but eventually admitted he had been drinking, claiming he had been drinking at home.

¶24    Based on the above, at the time the deputy handcuffed McFarlin and placed him in the squad car, the deputy was aware of facts and circumstances "sufficient to warrant a reasonable person to conclude" McFarlin had been operating the Grand Am just minutes before the deputy made contact with him and had been intoxicated while doing so.  *See **Blatterman***, 362 Wis. 2d 138, ¶35 (citation omitted).  The "probabilities" here were "sufficient 'to lead a reasonable officer to believe that guilt [was] more than a possibility.'"  *See **id.*** (citation omitted).  Based upon the report of McFarlin swerving between lanes and his physical condition as observed by the deputy, any reasonable officer would have believed he was likely intoxicated—to have probable cause, the deputy did not need to "know" for certain that he was.  With the fresh tire tracks and the fresh single set of footprints leading from the driver's side of the Grand Am to the trailer, the warm hood of the vehicle, the fact that the deputy heard no one else in the trailer and McFarlin stated no one else was there, McFarlin's admission that no one else uses the Grand Am, and his lying and obvious consciousness of guilt, it was "more than a possibility" that he was the male who had driven the Grand Am just minutes earlier.  *See **id.*** (citation omitted).  And, the evidence obviously supported a conclusion that McFarlin was in approximately the same likely intoxicated state when he drove the vehicle as he

was when speaking with the deputy.[2]  Because the deputy had probable cause to arrest McFarlin when he took McFarlin in handcuffs to the substation for further investigation, the circuit court properly denied his suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2023-24).

---

[2] Directing us to *State v. Walker*, 154 Wis. 2d 158, 183, 453 N.W.2d 127 (1990), *abrogated on other grounds by State v. Felix*, 2012 WI 36, ¶42, 339 Wis. 2d 670, 811 N.W.2d 775, at one point, McFarlin asserts, "[b]ut even if the deputy had probable cause, law enforcement did not have authority to arrest Mr. McFarlin without a warrant in the curtilage of his residence unless exigent circumstance[s] were present." We need not consider this argument for three reasons. First, McFarlin forfeited it because he did not raise it in the circuit court. *See Northbrook Wis., LLC v. City of Niagara*, 2014 WI App 22, ¶20, 352 Wis. 2d 657, 843 N.W.2d 851 ("Arguments raised for the first time on appeal are generally deemed forfeited."). Second, he raises it for the first time in his reply brief. *See Northwest Wholesale Lumber, Inc. v. Anderson*, 191 Wis. 2d 278, 294 n.11, 528 N.W.2d 502 (Ct. App. 1995) (stating it is a well-established rule that an appellate court will not consider arguments raised for the first time in a reply brief). And third, it is woefully undeveloped. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").

But, even if we did consider McFarlin's point here, we would have to note that *Walker* actually appears to support the State, as our supreme court in that case stated that the Fourth Amendment "prohibits police from making a warrantless *and nonconsensual* entry into a felony suspect's home [or curtilage] to arrest the suspect, absent probable cause and exigent circumstances." *Walker*, 154 Wis. 2d at 182-83 (emphasis added); *see also Payton v. New York*, 445 U.S. 573, 576 (1980) ("[T]he Fourth Amendment … prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest."). In this case, the record supports a conclusion that the deputy requested and received permission to enter the porch area to speak with McFarlin and thus was lawfully there at the time he established probable cause and seized him.