COURT OF APPEALS
DECISION
DATED AND FILED

August 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2025AP183**

Cir. Ct. No. **2023TR6363**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

FOND DU LAC COUNTY,

 PLAINTIFF-RESPONDENT,

 V.

ANDREW JOSEPH LUDWIG,

 DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Fond du Lac County: DOUGLAS R. EDELSTEIN, Judge. *Affirmed*.

¶1 GUNDRUM, J.[1] Andrew Joseph Ludwig appeals from a judgment of conviction for operating a motor vehicle while under the influence of an

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

intoxicant (OWI). Ludwig challenges the circuit court order denying his motion to suppress evidence, asserting that the sheriff deputies "unconstitutionally detain[ed] him]" by failing to conduct the OWI investigation in a sufficiently diligent manner.[2] For the following reasons, we disagree with Ludwig and affirm.

## *Background*

¶2 Ludwig was arrested on December 3, 2023, following a traffic stop that ultimately resulted in him receiving a citation for first-offense OWI.[3] He brought a motion to suppress evidence flowing from the stop. The circuit court held an evidentiary hearing on his motion, and the following relevant evidence was produced at that hearing.

¶3 At 2:03 a.m. on December 3, 2023, a sheriff's deputy performed a traffic stop on Ludwig after he committed a traffic violation. It was sleeting at the time, and the roads were in an unsafe condition. Approaching the vehicle and engaging with Ludwig, the deputy soon suspected Ludwig of OWI based on his slurred speech and glassy eyes, a "very strong odor of intoxicants coming from the

---

[2] In his brief-in-chief, Ludwig asserts the deputies violated his constitutional rights by not only detaining him for an unreasonable length of time but also by "moving [him] from the scene to the secured access location at the [s]heriff's [d]epartment." He states that "moving [him] to the secured area of the [department] garage *combined with* the thirty-one-minute delay violated Mr. Ludwig's constitutional rights under the Fourth Amendment." (Emphasis added.) In its response brief, the State lays out a string of Wisconsin cases holding that it is reasonable, and thus constitutional, in harsh weather conditions to transport a person suspected of OWI several miles to a law enforcement facility for field sobriety testing. In his reply, Ludwig abandons his "moving [him] from the scene to the secured access location" challenge and instead focuses only on the length of time he was detained for the OWI investigation. As a result, we address only the latter.

[3] Ludwig received three other citations as a result of the traffic stop. After the circuit court found Ludwig guilty of OWI, counsel for Fond du Lac County moved to dismiss the other citations, which motion the court granted.

vehicle," and an open beer bottle in the vehicle. Within two minutes of stopping the vehicle, the deputy called for another unit to respond to the scene, a "standard practice" when investigating a possible OWI.

¶4      Approximately three minutes into the traffic stop, the deputy returned to his squad car and also called "a field training officer along with a field trainee … to come to the scene to further the investigation," and so the trainee could continue the investigation for training purposes. The original backup squad the deputy had called for had not yet arrived on the scene, and the deputy did not know if it was already en route. In response to questioning by the circuit court, the deputy indicated that although it is not a "requirement" to have a backup deputy at the scene during the performance of field sobriety tests (FSTs), it is "standard practice" when feasible, for safety purposes. The deputy confirmed that he would have called for backup (as he had already done) "[w]hether or not there was a trainee on this shift."

¶5      Approximately ten minutes after the deputy (hereinafter "first deputy") returned to his squad, a second squad, the unit with the trainee deputy (hereinafter "second deputy"), arrived on the scene. The first deputy had already briefed the second deputy while he was en route to the scene, intending to have the second deputy continue the OWI investigation upon arrival. The second deputy did so, placing Ludwig into the back of his squad car for transport to the sheriff's department, where FSTs could be performed inside.

¶6      The second deputy testified next. He agreed that before arriving on the scene around 2:16 a.m., the first deputy had informed him via phone of the reasons he had stopped Ludwig's vehicle, and he understood it was an OWI investigation. At Ludwig's vehicle, the second deputy observed that Ludwig had

"bloodshot and glassy eyes, as well as slurred speech," and there was "the odor of intoxicants coming from the vehicle." Ludwig told the deputy that he had consumed six cans of beer that night and had stopped "right before the traffic stop."

¶7 The second deputy explained that it had been snowing for several hours, there was "a pretty heavy sleet, rain, snow mixture" coming down, it was cold, the roads were "slick" and "slippery," and snow and sleet were accumulating on his clothes and hands. Due to the weather conditions, the second deputy determined it would be better to have Ludwig perform FSTs at an alternative location because "[w]e always want to give [a driver] the best opportunity possible to perform [the] tests to prove that they aren't impaired, and I felt that due to the weather conditions, that we weren't giving Mr. Ludwig … a fair chance to prove that." The deputy planned to use the basement of the sheriff's department, which was "approximately two to three miles" away, for the tests because that was the "standard" alternative location for that area, adding, "that's what other deputies have done in the past as well."

¶8 The second deputy testified that rather than perform the FSTs in the snow, Ludwig, who was wearing a sweatshirt and had no coat, hat or gloves with him, agreed to perform them at the sheriff's department. The deputy noted that Ludwig had suggested doing them at his own residence, but the deputy did not agree to that location. After searching Ludwig, the second deputy placed him into the rear of the squad and transported him to the sheriff's department, where he performed the FSTs.

¶9 The circuit court denied Ludwig's suppression motion. Based on the testimony, the court found that "it may not be a requirement, but its consistent

with [the first deputy's] training, that a backup [deputy] be called regardless of trainee status or otherwise" and that Ludwig "agreed to do the field sobriety test out of the weather." The court recognized that

> it appears to be as courtesy as well as practicality to get out of the weather. It would impact law enforcement's ability to provide reasonable observations. … [T]hese are all practical considerations that the weather could be having an adverse affect upon the duty of law enforcement to investigate this further. And in that aspect of reasonableness[,] I think it's reasonable and should be encouraged to provide somebody an opportunity to do the best they can.

¶10 The circuit court further found that the squad video "suggest[ed] that they went from the traffic stop directly to the [sheriff's department]." The court determined that because of the "rough weather," "one would be perhaps running below the speed limit" and the drive to the sheriff's department from the scene would take longer. The court concluded that "[l]aw enforcement was engaged in the sole function of assessing the merits of FSTs. They did not distract from that purpose, there was no unnecessary delay that would prolong this traffic stop."

¶11 Ludwig appeals.

### *Discussion*

¶12 "When we review a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the circuit court's findings of fact. However, we review the circuit court's application of constitutional principles to the findings of fact de novo." *State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010) (citation omitted).

¶13 Ludwig contends "the continued detention for thirty-one minutes" for field sobriety testing, which included an approximate ten-minute wait for the

second deputy (the trainee), violated his Fourth Amendment rights. He complains that after the first deputy stopped him,

> [r]ather than continuing his investigation, he made the decision to call another deputy, … a deputy trainee, to complete the OWI investigation. For several minutes, [the first deputy] did nothing to further his OWI investigation, he simply waited for [the second deputy] to arrive. It took 13 minutes from the time of the initial stop for [the second deputy] to arrive on the scene. Once on [the] scene, [the second deputy] made the decision to transport Mr. Ludwig to the Fond du Lac County [Sheriff's Department], arriving thirty-one minutes after the initial stop.
>
> The detention was unconstitutionally extended when the [first deputy] stopped his investigation and simply waited for a training officer to arrive and then resumed the investigation after transporting Mr. Ludwig to the [department] garage thirty-one minutes after the initial stop.

¶14 "[T]he ultimate touchstone of the Fourth Amendment is reasonableness, … and reasonableness … is measured in objective terms by examining the totality of the circumstances." *State v. Weber*, 2016 WI 96, ¶¶18, 34, 372 Wis. 2d 202, 887 N.W.2d 554 (citation omitted). The record shows that the investigation, and thus the seizure time, was not unreasonably delayed by how the deputies conducted the investigation.

¶15 The first deputy's decision to call for backup was entirely consistent with the "standard practice" of his department. Ludwig develops no legal challenge to this practice. Ludwig, without actually developing an argument on this point, appears to intimate that something was particularly amiss because the first deputy specifically wanted the trainee, the second deputy, to gain experience by conducting this OWI investigation.

¶16 Notably, nothing in the record suggests that Ludwig's detention was unreasonably extended as a result of waiting for the second/trainee deputy to

6

arrive. Indeed, it appears that had the first deputy waited for the initial backup he called for to arrive on the scene, his detention may have been more prolonged. While the first deputy had already called for backup, per department practice, the subsequently called second deputy arrived before that originally called for backup arrived on the scene. Regardless, this was all part of performing a proper OWI investigation—doing so, for safety reasons, with a backup deputy present. Ludwig does not develop an argument that a ten-minute wait for a backup deputy to arrive, for safety purposes, is unreasonable and thus unconstitutional. And, there is no indication in the record that the investigation would have been completed earlier if the first deputy, rather than the second, had continued the investigation after the second deputy's arrival.

¶17    As we have stated,

> [i]n assessing a detention for purposes of determining whether it was too long in duration, a court must consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it is necessary to detain" the suspect. In making this assessment, courts "should not indulge in unrealistic second-guessing." In assessing a detention's validity, courts must consider the "totality of the circumstances—the whole picture."

*State v. Wilkens*, 159 Wis. 2d 618, 626, 465 N.W.2d 206 (Ct. App. 1990) (citations omitted). Here, "the whole picture" included the department's unchallenged practice of having a backup deputy on the scene for OWI investigations, for safety reasons, when feasible, the bad weather conditions the circuit court recognized would have increased the driving time to the sheriff's department, the importance of conducting FSTs in a location with more favorable conditions for Ludwig, and the fact that Ludwig consented to doing the tests at the

sheriff's department instead of on the road in the then-current weather conditions.[4] Because we conclude the deputies acted reasonably in light of the totality of the circumstances, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] Ludwig asserts that "[w]hile he eventually agreed to travel to the [s]heriff's [d]epartment, he really was left with no other choice. The deputies made it clear he could not go home, and because of the configuration of the squad he could not simply exit and walk away." Ludwig omits the fact that the second deputy undisputedly testified that he informed Ludwig before he entered the squad car that he could perform the FSTs on the roadway in the current weather conditions, but Ludwig agreed to do them at the sheriff's department instead.