COURT OF APPEALS
DECISION
DATED AND FILED

April 28, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1595-CR**

Cir. Ct. No. 2021CF1704

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DERRICK JOHN GRIGNON,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 GILL, J. Derrick Grignon appeals from a circuit court order granting the State's motion to revoke a deferred judgment agreement (DJA),

entered into by the parties pursuant to a plea agreement approved by the court.[1] The DJA contemplated that the court would withhold judgment for a period of 24 months if Grignon complied with the conditions outlined in the agreement. At the plea and sentencing hearing, the court scheduled a hearing to verify completion of the agreement to be held a day after the 24-month deferral period expired. Neither party objected to the date scheduled. Subsequently, the court unilaterally rescheduled that hearing to one week later than the originally scheduled hearing. During the period between the originally scheduled hearing and the rescheduled hearing—and after the deferral period had ended—the State filed a motion to revoke the agreement based on allegations that Grignon had committed additional crimes during the deferral period.

¶2    On appeal, Grignon argues that the circuit court exceeded its authority under the DJA by unilaterally rescheduling the hearing, effectively extending the deferral deadline. He further argues that the State exceeded its rights under the DJA by moving to revoke the DJA after the deferral period had ended.

¶3    Applying basic principles of contract interpretation, we conclude that the plain terms of the DJA permitted the State to file a motion to revoke the agreement after the deferral period ended but before the rescheduled hearing. In other words, the circuit court did not actually extend the deferral period. Moreover, as we explain in greater detail below, the DJA's revocation provisions,

---

[1] This court granted Grignon's petition for leave to appeal the circuit court's nonfinal order. *See* WIS. STAT. RULE 809.50(3) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

when read independently and together, permitted the State to revoke and terminate the DJA after the 24-month deferral period had expired. Any reading to the contrary would have required the State to move to revoke the DJA prior to verification of Grignon's compliance with all of the agreement's conditions. We therefore affirm, but on different grounds than those relied upon by the circuit court. *See State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010).

## BACKGROUND

¶4      In October 2021, the State charged Grignon with one count of possession of methamphetamine (Count 1) and one count of resisting or obstructing an officer (Count 2). Grignon ultimately entered no-contest pleas to both charges, pursuant to a plea agreement. On Count 2, the State agreed to recommend one year of probation.

¶5      On Count 1, the parties entered into a DJA, which asked the circuit court to accept Grignon's no-contest plea to Count 1 and "defer entry of the judgment of conviction for 24 months (deferral period)." The DJA further provided that if Grignon successfully completed all of the DJA's conditions, including not committing any further acts which rise to the level of probable cause of a violation of criminal laws "[d]uring the pendency of this agreement," the State would "move to dismiss this case" "at the end of the deferral period." The DJA additionally contained the following provisions:

> 7. **Proof of Completion** – At the end of the deferral period, the defendant shall submit written proof of compliance which will by [sic] certified by the monitoring agency and provided to the Court. In the instant matter, compliance documentation shall indicate satisfactory compliance [with the conditions] contained within this written agreement.

3

Failure to provide any compliance documentation will constitute non-compliance with the conditions of the agreement, and may result in the District Attorney filing a notice to terminate this written agreement. [(hereinafter, the "proof of completion provision")].

8. **Non-Compliance** – If, at any time during the deferral period, the defendant has not complied with the conditions of this agreement, the State may at its discretion revoke this agreement, and, upon notice to the defendant, move the Court to enter the judgment of conviction and the parties shall proceed to sentencing. The State reserves the right to argue for the any [sic] sentence up to the maximum allowable sentence for the charge subject to this agreement. [(hereinafter, the "noncompliance provision")].

….

10. **Extension of Agreement** - The State reserves the right to move the Court for a stipulated extension of the deferral period, as conditions require, and the defendant agrees that if any date is set beyond the agreement's expiration date by the Court, the Defendant is agreeing to an extension of the agreement until that date…. [(hereinafter, the "extension provision")].

¶6 During a plea and sentencing hearing on May 6, 2022, the circuit court accepted Grignon's no-contest pleas to both charges. On Count 2, the court withheld sentence and imposed one year of probation. With respect to Count 1, the court found that there was a sufficient factual basis in the criminal complaint to support a no-contest plea but that, pursuant to the DJA, it would not find Grignon guilty at that time. At the end of the hearing, the prosecutor stated, "Then I think we just need a review date [for the DJA]." The court responded, "We do need a review date. Twenty-four months, two years." The court's clerk then stated that the review hearing would occur on "Tuesday, May 7, 2024 at 8:30." Neither party

objected to the May 7 date, even though it was one day after the end of the two-year deferral period.

¶7      On May 1, 2024, the circuit court sua sponte rescheduled the DJA review hearing from May 7, 2024, to May 14, 2024.  On May 13—the day before the rescheduled hearing—the State moved to revoke the DJA, alleging that Grignon had violated the DJA when he was charged with additional felony offenses in two cases in April and July 2023.  Grignon failed to appear at the DJA review hearing on May 14, 2024, and the circuit court issued a bench warrant.  After Grignon was arrested on the bench warrant, a new DJA review hearing was scheduled for June 14, 2024.

¶8      On June 13, 2024, Grignon moved to enforce compliance with the DJA and deny the State's motion to revoke.  Citing *State v. Kaczmarski*, 2009 WI App 117, 320 Wis. 2d 811, 772 N.W.2d 702, and the terms of the DJA, Grignon argued that the deferral period ended on May 6, 2024, and that the State's revocation motion was untimely, having been filed after the deferral period had ended.  Because the State did not move to revoke the DJA during that deferral period, Grignon posited that the terms of the DJA and *Kaczmarski* entitled him to specific performance of the DJA—namely, dismissal of Count 1 with prejudice.

¶9      Distinguishing the language of the DJA in this case from the language of the agreement in *Kaczmarski*, the State countered that under the agreement's noncompliance provision it could revoke the DJA for Grignon's failure to comply with the conditions of the agreement even after the deferral period concluded.  Alternatively, the State argued that it could revoke the agreement after May 6, 2024, pursuant to the extension provision, because the circuit court extended the deferral period by rescheduling the DJA hearing to

May 14, 2024. In response, Grignon argued that the noncompliance provision was inapplicable because the State did not move to revoke the DJA "during the deferral period." Furthermore, Grignon asserted that the extension provision did not apply, and the court could not extend the deferral period, because "[t]here was no stipulation" to do so.

¶10 Following the parties' arguments, the circuit court orally granted the State's motion to revoke the DJA. The court concluded that the DJA's extension provision allowed the court to schedule a review hearing beyond the deferral period and that Grignon agreed, by virtue of the extension provision, that the DJA would be extended until that date. On August 12, 2024, the court entered a written order granting the State's motion to revoke the DJA.

¶11 Grignon now appeals.

## DISCUSSION

¶12 On appeal, both the State and Grignon agree that a DJA, like a deferred prosecution agreement (DPA), is analogous to a contract, and we therefore "draw upon principles of contract law in determining the respective rights of the parties to the agreement."[2] *See Kaczmarski*, 320 Wis. 2d 811, ¶10. "[W]hen terms of a contract are plain and unambiguous, we will construe the contract as it stands."[3] *Id.* (alteration in original; citation omitted). "We are not

---

[2] There is little to no case law in Wisconsin addressing DJAs, much less a DJA with terms identical to or similar to the DJA entered into by the parties in this case. Generally, however, DJAs, unlike DPAs, are not governed by statute and require circuit court approval. *See generally State v. Wollenberg*, 2004 WI App 20, ¶¶6-11, 268 Wis. 2d 810, 674 N.W.2d 916 (2003); WIS. STAT. § 971.39 (governing DPAs in counties with a population of less than 100,000 people).

[3] Neither party on appeal contends that the DJA is ambiguous.

free 'to revise an unambiguous contract in order to relieve a party to a contract from any disadvantageous terms to which he or she has agreed.'" *Id.* (citation omitted). The interpretation of a contract presents a question of law that we determine independently of the circuit court. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586.

¶13 The parties first dispute whether the circuit court had the authority under the extension provision to sua sponte extend the deferral period to May 14, 2024. We conclude that this issue is not pertinent to our analysis. Although the court determined that it had the authority to unilaterally extend the deferral period, we conclude that, under the plain terms of the DJA, the court did not actually extend the deferral period, which ended on May 6, 2024. We further conclude, however, that the DJA permitted the State to move to revoke the agreement after the deferral period.

¶14 The proof of completion provision dictated that Grignon could not comply with the DJA's conditions until he filed proof of his compliance "[a]t the end of" the 24-month deferral period. This provision permitted the State to file "a notice to terminate"[4] the DJA if Grignon failed to file this paperwork. The agreement therefore provided that Grignon could not fully comply with the conditions of the DJA until he filed his proof of compliance at the end of the deferral period. Therefore, as the State argues, the State could not move the

---

[4] The State appears to suggest that the phrases "terminate this written agreement" (as used in the proof of completion provision) and "revoke this agreement" (as used in the noncompliance provision) are synonymous. Grignon does not expressly disagree, nor has he provided an alternate interpretation of those phrases. Given that the terms "terminate" and "revoke" have similar meanings and are used in relation to ending the DJA, we agree with the State. Accordingly, we use the terms interchangeably when referring to the State's right to end the DJA.

circuit court to revoke the DJA for Grignon's failure to comply with the agreement's conditions until after the deferral period had concluded. Here, the case was still ongoing on May 13, 2024, despite the deferral period having ended, because Grignon had not complied with the proof of completion provision and the court had yet to adjudicate Grignon's compliance with the DJA.

¶15 Addressing the noncompliance provision, we are unpersuaded by Grignon's argument that the provision dictated that the State could revoke or terminate the DJA *only* "during the deferral period." Again, that provision reads that if "at any time during the deferral period, the defendant has not complied with the conditions of this agreement, the State may at its discretion revoke this agreement, and, upon notice to the defendant, move the Court to enter the judgment of conviction and the parties shall proceed to sentencing." We agree with the State that the clause "at any time during the deferral period" limited Grignon's exposure for noncompliance with the DJA's conditions, other than filing the proof of compliance, to the deferral period that ended on May 6, 2024. However, as the State argues, the noncompliance provision did not limit the State's revocation discretion to that period while the case was still ongoing—i.e., while Grignon still had conditions he needed to fulfill under the agreement and the circuit court had yet to rule on his compliance with the agreement.

¶16 Reading the noncompliance and proof of completion provisions differently would render the language therein superfluous. *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶37, 363 Wis. 2d 699, 866 N.W.2d 679 ("Interpretations that give reasonable meaning to each provision in the contract are preferred over interpretations that render a portion of the contract superfluous."). Grignon could not provide proof of compliance with the DJA until the end of deferral period, and, therefore, he could not comply with all of the conditions of

8

the DJA until the deferral period ended. Adopting any other reading of the DJA would have required the State to move to revoke or terminate the agreement before it had knowledge of Grignon's full compliance with the agreement's conditions.

¶17 We disagree with Grignon that our reading of the DJA "would seemingly permit post-deferral, fully retroactive revocation without *any* temporal limits." Under the DJA's terms, the State was temporarily limited to filing a motion to revoke the agreement until the rescheduled hearing, which would determine whether Grignon had satisfied the terms of the agreement. The reasons for revocation were limited to Grignon's noncompliance with the conditions of the agreement "during the deferral period" (i.e., committing new crimes during the 24-month period) and his failing to file the required proof of compliance with the agreement "[a]t the end of the deferral period." Had Grignon submitted written proof of his compliance, the circuit court would have reviewed his submission at the rescheduled hearing and determined whether Grignon had successfully complied with the DJA. If he had complied, the State would have been required under the DJA to move the court to dismiss Count 1. Here, Grignon failed to comply with the proof of completion provision, meaning the State could exercise its discretion to move the circuit court to revoke the DJA prior to the rescheduled hearing, which, as explained, was permitted under the DJA.

¶18 Grignon also contends that our interpretation of the DJA "is against the thrust of this Court's decision" in *Kaczmarski*. According to Grignon, *Kaczmarski* stands for the proposition that "a contract needs to explicitly authorize post-revocation action," which he claims was lacking in the DJA.

9

¶19 Even if we were to read ***Kaczmarski*** as narrowly as Grignon, the facts presented in that case are materially distinguishable from those presented here. The DPA at issue in ***Kaczmarski*** stated that if the defendant violated the agreement, "the District Attorney may, *during the period of deferred prosecution* … prosecute you for this offense." ***Kaczmarski***, 320 Wis. 2d 811, ¶13. We held that the State could not resume prosecuting the defendant "after the period of the deferred prosecution had ended" because "the only reasonable construction of the deferred prosecution agreement is that the district attorney may resume prosecuting [the defendant] for breach of the agreement only before the agreement expires." ***Id.***, ¶¶4, 13-14. Conversely, and for the reasons explained above, the DJA in the instant case, by its plain terms, *did* authorize revocation of the agreement after the deferral period.

¶20 In summary, under these circumstances, the State could, prior to or at the rescheduled hearing, revoke the DJA for Grignon's violation of the condition that he not commit any further acts rising to the level of probable cause of a violation of a criminal law and/or his violation of the proof of completion provision. The circuit court did not extend the deferral period because that period ended on May 6, 2024. The rescheduled hearing merely addressed Grignon's compliance with the DJA "during the deferral period" and "[a]t the end of the deferral period." Accordingly, we affirm the court's order granting the State's motion to revoke the DJA, albeit on different grounds. *See **Smiter***, 331 Wis. 2d 431, ¶9.

> *By the Court.*—Order affirmed.

> Recommended for publication in the official reports.